JOHN D. SHEARER et al. v. EDWARD WILDER et al.

No. 7828.

CONTRACT FOR PURCHASE OF CITY LOTS—*Authority of Purchaser —Mechanics' Liens — Validity as against Vendor.* The owner of city lots, desiring to secure the erection of houses on a part of the same, agreed with another for the erection of two houses according to certain plans and specifications at a limited cost, and that, upon the completion of the houses and after they had been freed from all liens, the owner would convey the lots to the purchaser and take back a mortgage upon the lots so improved for the price of the lots, and also for money furnished by the owner toward the cost of building the houses. The purchaser procured materials and labor, and the houses were built according to the plans and specifications prescribed by the owner, but the purchaser never paid the parties who furnished the materials and labor, and the owner of the lots has never paid anyone for the buildings placed on his lots. The lots were never conveyed to the purchaser, and whatever rights he had under his purchase were relinquished to the owner about the time of the completion of the houses. *Held,* In an action to foreclose the liens claimed against the property, that under the contract of purchase the purchaser was authorized to contract for materials and labor with which to build the houses, and that the laborers and material-men were entitled to a lien against the property and all of the legal and equitable interest of the owner therein.

*Error from Shawnee Circuit Court.*

JOHN D. SHEARER brought an action to recover for labor performed in the construction of two dwelling-houses upon property the title of which was in Edward Wilder. Wilder and several other persons who were contractors and lien-claimants were made parties defendant, each of whom set forth his claim in appropriate pleadings. A trial was had before the circuit court of Shawnee county without a jury, and upon the testimony produced the following findings of fact and conclusions of law were made :

" 1. On the 16th day of July, 1889, Edward Wilder, being the owner in fee simple of an addition to the

city of Topeka, and of the lots described in plaintiff's petition, entered into a contract with one S. W. McCann, a copy of which said contract is attached to Wilder's answer in this case, which is made a part of this finding of fact, to wit:

'This contract, made in duplicate this 16th day of July, 1889, between S. W. McCann and E. Wilder, both of Topeka, Kan.,

'WITNESSETH, That, in consideration of the agreement of the said Wilder hereinafter specified, the said McCann hereby agrees to construct upon lots in Wilder's addition to the city of Topeka, to be selected by the parties hereto, two houses to cost not less than $2,500, nor more than $3,000 each, of general design to be approved by said Wilder and according to plans and elevations agreed upon and marked E. W., and upon completion of said houses and upon payment of the amount hereinafter stipulated, to be paid by said Wilder, said houses are to be clear and free from any mechanics' or other liens.

'The said Wilder agrees, for the sake of securing said erections of said houses in his addition, to furnish and pay toward the cost of said houses the proportion of $1,000 for a house costing $2,600, said payment to be made by him to said McCann upon the completion of said house or houses, and only upon condition that at the time of said payment said house or houses are free and clear of any mechanics' or other liens, or any liabilities whatever for labor or material; and upon completion of said houses, free and clear as above, the said Wilder is to make a good and sufficient deed, general warranty, to said McCann or his assignee, and to take from said McCann, or his assignee, a mortgage for the amount of money advanced and paid by the said Wilder as above toward the cost of said house or houses, and for the listed value of said lots at $500 per lot, or $1,000 on each house, said mortgage or mortgages to run for five years at 8 per cent. interest, payable semiannually; and at the election of said Wilder shall be made either in one mortgage to cover cash advanced and the price of the lots, or in a first mortgage for the cash and a second mortgage for the price of the lots.

'*In witness whereof*, We have hereunto set our hands, the day and year above written.          S. W. McCANN, 1116 Tyler street.
                                                          E. WILDER.'

"2. On the said date, July 16, 1889, the said Wilder and McCann agreed upon the plans and elevations referred to in said contract, and marked the same 'E. W.,' and at the same time agreed upon specifications in writing, in pursuance of which the houses agreed to be built in said contract were to be built.

"3. About the same time the said Wilder and McCann selected as the lots upon which said houses were to be built lots numbered 481, 483, 485, 487, on Logan street, in Wilder's addition to the city of Topeka, Shawnee county, Kansas.

"4. That thereafter, on about the 17th day of July,

1889, the said defendant Cyrus Goddard agreed with the said S. W. McCann to build said houses upon said lots in accordance with the said plans, elevations, and specifications, at an estimated cost of about $2,000, or about $1,000 per house.

"5. That thereafter, on or about the 18th day of July, 1889, the said Goddard, in pursuance of his agreement with said McCann, commenced the construction of said houses, and completed the same on the 28th day of September, 1889.

"6. That said Goddard built said two houses in accordance with plans, elevations and specifications therefor, as the same were agreed upon by Wilder and McCann.

"7. That Goddard purchased materials to be used and which were used in the construction of said houses, and employed men to perform labor upon, in and about the same, as appears from exhibit 'A,' attached to his lien statement herein, and as will more fully appear from the petition of the plaintiff and cross-petitions of the other defendants herein.

"8. That there is due and owing to said Goddard under his agreement with said McCann for building said two houses upon said lots the sum of $2,154.27, with interest thereon from September 28, 1889, and that said two houses are of the value of $2,154.27.

"9. That there is due to the following-named persons the sum set opposite the name of each for work and material furnished by such persons in the erection of the buildings aforesaid as subcontractors with said Goddard, to wit: John D. Shearer, $59.20; J. W. Stout & Co., $105.15; Owen McKernan and J. T. Hampton, $153.40; J. Thomas, $927.35; Frank Hamm, $148.18; John Billodeau, $89.07; A. Boies, $66.40; H. F. King, $114.35; Cynthia Robbins, as administratrix, $36.90; John Speer, $198.90; Cyrus Goddard, $2,384.04, less $1,898.80, due subcontractors and material men.

"10. That on or about the said 29th day of September, 1889, the said Wilder and McCann entered into and executed the writing which is attached to

the amended lien statement of the said Goddard, filed with his amended answer and cross-petition herein, and is marked 'Exhibit C,' and said writing is made a part of this finding of fact, to wit:

'This instrument, made this —— day of September, 1889, between S. W. McCann, party of the first part, and Edward Wilder, party of the second part, both of Topeka,

'WITNESSETH, That, whereas, heretofore, on the 16th day of July, 1889, a contract was entered into between said parties concerning certain lots therein mentioned, and a conveyance of the same; and

'WHEREAS, The said S. W. McCann finds himself unable to fully comply with the terms and conditions of said contract and to carry out the same; and

'WHEREAS, The said S. W. McCann desires to be released from the obligations in said contract and to release said Edward Wilder from the obligations therein to said S. W. McCann or assigns:

'Now, therefore, It is hereby agreed and understood by the parties that the said contract heretofore mentioned shall be annulled and abrogated, and that the said Edward Wilder shall wholly be released and discharged from the obligations contained in said contract toward said McCann or assigns, or from any liability therein, and from the obligations of making payments in said contract to the said S. W. McCann, or advancing any money as a loan specified therein, or from making any conveyance of any lands as specified in said contract, and the said S. W. McCann is discharged from the further performance of said contract.

'In witness whereof, The said parties have hereunto set their hands, the day and year above written.          E. WILDER.
                                                              S. W. McCANN.'

"11. That thereafter the said Goddard and the said plaintiff, John D. Shearer, and each and all of the other defendants herein, in the time prescribed by law, duly filed their lien statements duly verified, and said statements were in accordance with all the statutory requirements, and notice in writing of the filing of the same at the time were duly served by the respective lien claimants upon the said defendants Wilder and McCann, except the claim of Goddard. A copy of the amended lien statement of Cyrus Goddard is made a part of this finding of fact, the same being attached to the amended cross-petition of said Goddard filed herein.

"12. That the said Wilder never has paid the said McCann anything for said houses so built on said lots, and that the only consideration of the contract of the said Wilder and McCann referred to in finding No. 10 was their mutual promises and releases just as in said writing set forth.

"13. That during the erection of said two houses on said lots the said Wilder visited the premises once when the plastering was being put on the last one thereof which was built, and when they were completed he examined and went through both of said houses.

"14. That the value of said lots described in plaintiff's petition before said two houses were built thereon was $250 per lot, or the total sum of $1,000; that said lots were enhanced in value by the building of said two houses by said Goddard, and by the materials and labor put therein by the claimants herein, in the sum of $2,154.27, and that said property after said houses were erected thereon was of the value of $3,154.27.

"15. At no time prior to the completion of the buildings did either Goddard or any subcontractor or material man, or any party to this suit, inquire of Wilder concerning the nature of McCann's contract or Wilder's interest in the premises.

"16. Wilder at no time supervised or directed the manner of the construction of the buildings or inspected the materials used, or gave any directions concerning the buildings; but after the buildings were alleged to be completed, Wilder refused to accept them as in accordance with the plans, but claimed that the dimensions were not proper, and therefore refused to make the loan of money to McCann as specified in his contract.

"17. At no time after the completion of the buildings was McCann enabled to discharge the liabilities or liens attached upon the premises, nor was he able to give the bond required by the statute against mechanic's liens, and, finding himself unable to comply with his contract in this respect, and that he was unable to procure the loan from Wilder as provided in their agreement, he voluntarily released Wilder by the writing mentioned in finding No. 10.

"18. Neither Goddard nor any of the subcontractors nor material men were willing to assume McCann's obligations under the contract and discharge the liens.

"19. About the time of the completion of the buildings, and shortly thereafter, the subcontractors and material men who are parties to this suit presented their claims and threatened to file liens, and did in fact file liens upon the premises. Goddard, however, gave no written notice to Wilder as required by law, but he served his notice upon S. W. McCann.

"20. At the time of the alleged completion of the buildings it was ascertained from Goddard and others, and also assented to by McCann, that the cost of both the houses amounted to only the sum of $2,100, or $1,050 for each house.

"21. At no time was McCann authorized by Wilder to act as his (Wilder's) agent for the purpose of binding either himself personally or his title to the land in controversy, except as may appear in their contract of July 16, 1889.

"22. Immediately after the execution of the contract between Wilder and McCann on July 16, 1889, Wilder put McCann in possession of the lots in question, and he so remained in possession until the execution of the release, about the 29th day of September, 1889.

"23. Wilder never paid anything on account of the construction of the houses, nor did he ever advance any money to McCann for that purpose, or by way of a loan, or on any account whatsoever." ·

The court also made the following conclusions of law :

"1. By complying with the terms of the contract of July 16, 1889, between himself and Wilder, McCann became the equitable owner of the lots in question, and such equitable title is subject to the liens aforesaid.

"2. The contract executed on September 29, 1889, by which McCann and Wilder voluntarily released each other from the contract of July 16, 1889, had the effect to extinguish the equitable title which McCann held at that time ; but such extinguishment was made after the buildings were commenced and when they

17—56 KAS.

were substantially completed, but such extinguishment did not affect such liens as were then filed, or that were lawfully thereafter filed for work and material used in the construction of said buildings.

"3. The defendant Wilder has a first lien, prior, on said premises for the contract price of his lots, to wit, $2,000, with 6 per cent. interest from July 16, 1889.

"4. The plaintiff and defendants Frank Hamm, J. W. Stout & Co., John Billodeau, Owen McKernan, J. T. Hampton, J. Thomas, A. Boies, H. F. King, Cynthia Robbins, as administratrix, and John Speer, each have a lien on said properties second to that of Wilder; the said liens of the parties named in this finding are equal in priority to each other.

"5. The defendant Goddard has a lien upon said premises subsequent to the liens above described, to the extent of $2,154.27, less the amount found due to the parties named in the finding last above.

"6. Judgment should be rendered in this case for the sale of the property above described in the manner provided by law, the proceeds to be disposed of as here indicated; lots 481 and 483 to be sold together, and lots 485 and 487 to be sold together. Out of the proceeds the costs due to the officers of the court and witnesses, taxed at $———, to be first paid; second, the lien of Wilder; third, that the other lien holders, with their attorney fees taxed herein, be paid *pro rata*, and any balance be paid into court subject to its future order.

"7. That the plaintiff, J. D. Shearer, and the defendants Frank Hamm, J. W. Stout & Co., James Billodeau, Hampton and McKernan, J. Thomas, A. Boies, H. F. King, and John Speer, have a personal judgment against the defendant Cyrus Goddard for the amount of their several claims hereinbefore found; that the defendant Cyrus Goddard have a personal judgment against the defendant S. W. McCann for the amount of his claim; and that the defendant Cynthia Robbins, as administratrix, should have personal

judgment against the defendants J. T. Hampton and Owen McKernan for the amount of her claim.

"8. That the attorney's fees which the said plaintiff, Shearer, and the said defendants Frank Hamm, James Billodeau, Hampton and McKernan, A. Boies, and John Speer, ought respectively to recover should be taxed as a part of the costs in this case, and as such costs recovered against McCann and Goddard's interest in the proceeds of the property sold."

Motions for judgment upon the findings and for a new trial were made by the plaintiff and the defendants, and overruled, and the court thereupon rendered judgment in accordance with the foregoing conclusions of law. The plaintiff and all the defendants, except Wilder and McCann, brought this proceeding in error, and Wilder has filed a cross-petition in error, in which he asks for a reversal or modification of the judgment.

*Eugene Wolfe, Curtis & Safford,* and *C. A. Starbird,* for plaintiffs in error.

*Robert Dunlap,* and *Alfred A. Scott,* for defendant in error Edward Wilder.

The opinion of the court was delivered by

JOHNSTON, J.: The questions argued in this case must be determined from the findings of fact, as neither party has preserved the evidence upon which they are based. The facts stated by the trial court show that Wilder owned an addition to the city of Topeka and was desirous of erecting houses in the same. He authorized the building of two houses upon his lots, and indicated the general design, elevations and plans upon which to build, and also stipulated the approximate cost of the same. McCann, who was acting with and for him, agreed to purchase

the lots upon which the houses were built, upon certain conditions with which he never complied. Houses of the character specified by Wilder were built at about one-half of the estimated cost, but McCann never obtained any title to the lots, and if he ever acquired any interest by reason of his proposed purchase he formally surrendered and transferred it to Wilder. The houses were erected upon ground which then belonged to Wilder, and the title is in him now, and these houses have become a part of his real estate, but he has paid nothing to anyone, and those who have contributed their labor and materials to enhance the value of his property have received nothing. In his behalf it is contended that McCann acquired no interest in the land to which the liens could attach, and that if he ever possessed any interest in the property it had never ripened into an equitable title, and that he had no authority to subject the property to a lien. Much reliance is placed on *Lumber Co. v. Schweiter*, 45 Kan. 207, but the rule of that case hardly applies to the facts in this one. There they sought to establish liens against the proposed purchaser of the property, while here they are seeking to establish liens against the owner. In that case the proposed purchaser had specifically stipulated that, until a conveyance of the property was made and a back mortgage given, the legal and equitable title should remain in the original owner, and until the conveyances were made the proposed purchaser could not subject the property to any liens. In that case the main purpose of the contract was the sale of lots, while here the principal purpose appears to be to procure the building of houses upon the addition of Wilder. Instead of stipulating that the proposed purchaser should not subject the property to any liens, as in the Schweiter case, Wilder

appears to have contemplated that liens might be
created against it, as he stipulates that no convey-
ance will be made by him to McCann nor any money
loaned thereon until it is free and clear of any me-
chanics' or other liens or any liabilities whatever for
labor or material.   He gave McCann possession of
the lots with authority to procure the erection of
houses thereon, and he certainly foresaw that work
and materials would be expended upon his lots, and
from the contract it seems that in carrying out his
purpose he supposed that liens would be created
against the property.   The authority which he con-
ferred in effect made McCann his representative or
agent in obtaining the erection of the houses.   The au-
thority did not go to the extent of creating a personal
obligation against Wilder, but under the circumstances
we think it did give McCann power to subject the
property of Wilder to liens for the improvements which
he arranged should be made upon the same.   It will
be observed that he selected the plans and elevations,
agreed upon the specifications, which were reduced to
writing, and fixed the limit of cost of the buildings.
He agreed to pay money toward the cost of the houses,
and while they did not cost nearly as much as he con-
templated they would, just such houses as he specified
and agreed should be built were built.   The trial court
specifically finds that the houses were built in accord-
ance with the plans, elevations and written specifica-
tions agreed upon by Wilder.   It is true he expected
the houses would cost from $2,500 to $3,000 each,
while houses of the kind and quality designated by
him were actually built for less than $1,000 each.
Wilder visited the premises once during the construc-
tion of the houses, and also after they were completed.
He objected to them, claiming they were not built ac-

cording to the plans, nor of proper dimensions; but the findings of the court clearly overrule his objections where they state that the houses were built in pursuance of the written specifications and in accordance with the plans and elevations. No objection was then made as to the quality of the houses, nor that the cost price had not been marked sufficiently high.

We think a clear implication arises from the contract of the parties that McCann was authorized and empowered to procure the labor and materials necessary to the construction of the houses erected on Wilder's lots. Wilder was not to convey the lots until after the houses were built. To comply with his agreement, it was necessary for McCann to procure the erection of such houses as Wilder stipulated and specified should be built. The lienors furnished the material and labor which were used in carrying out Wilder's purpose. He never parted with the legal or equitable title to the land upon which the houses were erected, and now, after they have been erected in accordance with the plans and specifications, and after McCann has surrendered all his rights under the contract to Wilder, it would be a great injustice to allow Wilder to hold the property enhanced in value by the labor and material of the lienors without paying for such labor and material. We think that, by his contract, Wilder has subjected the lots in their improved condition to the liens of the claimants. No reason is seen for allowing Wilder a lien for the purchase-money of property which was never conveyed and for which no consideration was paid. The conditions of the contract of purchase were never complied with, and if McCann ever acquired any interest in the property it is a little more than a shadow. It is a question of grave doubt whether it

amounted to such an interest as could be sold or subjected to liens. However much it may have been, it was relinquished to Wilder, who has had throughout the full legal and equitable title to the lots. McCann has, therefore, no claim against Wilder for the lots, and Wilder in turn has no lien upon his own lots by reason of the unperformed contract and the relinquished rights of either party under it. As tending to sustain the views stated, we cite *Manufacturing Co. v. Kountze*, 30 Neb. 719; *Henderson v. Connelly*, 123 Ill. 98; *Hill v. Gill*, 40 Minn. 441; *O'Leary v. Roe*, 45 Mo. App. 567; *Lumber Co. v. Mosher*, 88 Wis. 672; *Hickey v. Collom*, 47 Minn. 565.

Under the facts, the judgment and decree of the court should be modified by denying Wilder any lien upon the premises, and the plaintiffs in error should be adjudged to have first liens upon the premises, all equal in point of priority. The judgment so modified will be affirmed.

All the Justices concurring.