### In re LYNN CAMP COAL CO.

#### (Circuit Court, E. D. Kentucky.   December 10, 1908.)

#### No. 612.

**1. Bankruptcy (§ 192*)—Liens Under State Laws.**

Ky. St. 1909, § 2487, gives the seller of mine materials an inchoate lien for the purchase price on the property sold, together with the entire mining plant, which becomes perfected on assignment of the mine, etc., for the benefit of creditors, as provided by section 2490. *Held* that, where a seller of mine material having a lien under such sections accepted a chattel mortgage from the buyer a short time before the owner became a bankrupt, the seller would be entitled to the statutory lien in case the mortgage was invalid for any reason.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 294; Dec. Dig. § 192.*]

**2. Bankruptcy (§ 164*)—Payment to Lien Creditor—"Preference."**

A payment to a creditor having an inchoate lien cannot constitute a preference within the bankrupt act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*

For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 164\*)—"PREFERENCES"—PAYMENTS.

> In order that a payment by a bankrupt should operate as a preference, it must be shown that the bankrupt was insolvent, and that the creditor had reasonable cause to believe the payment was intended as a preference.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.\*]

In Bankruptcy.

S. B. Dishman, for C. M. McClung & Co. and Geo. D. Whitcomb Co.
N. R. Patterson, for Southern Brass & Iron Co.
Thos. D. Tinsley, and J. M. Robsion, for trustee.

COCHRAN, District Judge. This cause is before me on the petition for review of the Southern Brass & Iron Company, a creditor. It seems to have filed two claims: One for $209, an open account; and the other for $1,600, a note. The former is designated as No. 2, and the other as No. 67. I do not find claim No. 2 in the papers, and I do not understand that any action has been taken by the referee in relation thereto of which complaint is made here. The complaint made is limited to his action in relation to claim No. 67, and also in reference to a payment of $1,000 made by the bankrupt to the petitioner.

The bankrupt operates a mine in Knox county, in this state. The petitioner is engaged in the business of selling materials and supplies to be used in the construction and operation of mining plants. Prior to the execution of said note—mainly in the year 1907—the petitioner had sold the bankrupt a considerable amount of materials and supplies for the carrying on of its mine. On December 19, 1907, it executed its note to the petitioner for the sum of $2,600, on account of amount then due, payable in 60 days. The note was not paid at maturity. On March 14, 1908, a payment of $1,000 was made thereon, and it was renewed for the balance of $1,600. It was dated back to February 19, 1908, date of maturity of the original note, and was made payable in 90 days. A few days subsequent the bankrupt gave the petitioner a mortgage. It is dated March 16, 1908, acknowledged March 25, 1908, and lodged for record April 1, 1908. It is rather indefinite both as to the property covered by it and as to the indebtedness intended to be secured thereby. I think, however, that a reasonable construction of it is that it was intended to cover the property sold by the petitioner to the bankrupt, and no more, and that it is sufficient to secure thereon said $1,600 note. Palmer, the general manager of the bankrupt, testified that he told petitioner's salesman when the mortgage was given that he had no authority to execute the mortgage. But when he acknowledged it he stated that he had executed it by authority of the bankrupt's board of directors, as appears from clerk's certificate. I am inclined to believe that this statement must govern, in the absence of further evidence concerning the matter. No exception, however, is taken to the mortgage by the trustee on the ground of want of authority in Palmer to execute it. The sole

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ground of exception thereto was that it and the payment of the $1,000 were preferences within the meaning of the bankrupt act. I do not understand the trustee to have filed any pleading seeking a recovery of the $1,000 as a preference. He simply relied on said preference, as well as preference of the mortgage, as a ground of objection to the claim asserted under the mortgage. Possibly it is proper to say that he relied on the preference of $1,000 as against the petitioner's right to share as a general creditor for the amount of said claim to the extent thereof. The referee held that the petitioner had no lien to secure its claim No. 67, and ordered both claims to be expunged unless the petitioner refunded said $1,000, and ordered it to pay said sum to the trustee on or before September 1, 1908. It is of this action that the petitioner complains.

At the time of the payment of the $1,000 and the giving of the mortgage, the petitioner had an inchoate lien under section 2487 of the Kentucky Statutes of 1909, which would become perfect upon the happening of any of the contingencies specified in said section or section 2490. Section 2494, on which counsel for trustee relies, had no bearing on petitioner's lien. In re Bennett, 153 Fed. 673, 678, 692, 82 C. C. A. 531. Had no mortgage been executed, this lien would have become perfect under the statute on the assignment to Robison for benefit of creditors. This lien would have covered not only the property sold by petitioner to the bankrupt, but the latter's entire mining plant. The subsequent proceeding in bankruptcy would have had no harmful effect upon this lien. I do not see how the taking of the mortgage can help the trustee. Its sole effect is to limit the lien to the property covered by it. If invalid for any reason, the effect is to remit the petitioner to its statutory lien. It cannot be treated as a waiver thereof, if invalid. I therefore hold that the petitioner has a valid lien for its claim No. 67 on the property specified in the mortgage.

Then as to the $1,000. It is perhaps sufficient to say that the trustee has filed no pleading seeking to recover it. But I do not think a payment to a creditor having such an inchoate lien can be a preference within the meaning of the bankrupt act. Besides, I do not think the evidence brought the case within the requirements of the bankrupt act as to what is necessary to constitute a preference. It is essential that the bankrupt should have been insolvent when the $1,000 was paid, and the petitioner should have had reasonable cause to believe that it was intended thereby to give a preference. Whatever may be said on the question as to the solvency of the bankrupt, I think the evidence comes short of establishing that the petitioner then had reasonable cause to believe that it was intended by the payment of the $1,000 to give it a preference.

The action of the referee is reversed, and cause remanded for proceedings consistent herewith.