[No. 20698.    Department Two.    February 24, 1928.]

A. E. HEATON, *as Trustee, Appellant,* v. FRED CHITTY *et al., Respondents.*[1]

[1] BANKRUPTCY (5-1)—PREFERENCES BY BANKRUPT—TRANSFERS. A deed given by or in the interest of a bankrupt, on a sufficient consideration, for the release of a mortgage upon the property, is not an unlawful preference, where the grantee was not a creditor of the bankrupt, and there was no depletion of the bankrupt's estate, through the fact that the fair market value of the property did not exceed the mortgage indebtedness against it.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered November 29, 1926, dismissing an action to set aside preferences by a bankrupt, tried to the court. Affirmed.

*William R. Lee, Roscoe Fullerton,* and *John S. Lynch,* for appellant.

*Troy & Yantis,* for respondents.

MAIN, J.—This action was brought by the plaintiff as trustee in bankruptcy to set aside a deed to block 4 of Galliher's Addition to Olympia and to compel the transfer of this property to the plaintiff. The cause

[1]Reported in 264 Pac. 417.

came on for trial before the court without a jury, and at the conclusion of the plaintiff's evidence, upon motion˙ of the defendants, a judgment was entered dismissing˙ the action, from which the plaintiff appeals.

To an understanding of the controversy, it will be necessary to detail the title of block 4 from the time it left John R. Dodge and wife until it was conveyed to Fred Chitty. August 6, 1924, Dodge and wife conveyed block 4 of Galliher's Addition to Henry Meyer. August 30, 1924, Meyer and wife mortgaged the property to the˙Capital Savings and Loan Association for $3,000. The money that was realized from this loan went into the building of a house upon the property. September 4, 1924, Meyer and wife mortgaged the property to J. R. James for $3,570.20. This mortgage was released in February, 1925, and on February 11 of that year a mortgage was made by Meyer and wife to John R. Dodge for $400, to cover the balance of the purchase price of the lot. February 18, 1925, Meyer and wife again mortgaged the property to J. R. James for $3,-570.20. The purpose of releasing the prior mortgage and giving the˙ second was to enable the Dodge mortgage to become a lien upon the property subordinate only to the mortgage of the Capital Savings and Loan Association.

On November 2, 1925, Meyer and wife executed a deed, without specifying the name of the grantee, and delivered it to A. L. James, the son of J. R. James. At this time, the latter was desirous that his mortgage be paid. About November 10, 1925, the name of Fred Chitty was placed in the deed as grantee and the deed delivered to him by A. L. James. At this time, Chitty transferred to J. R. James, in liquidation of his mortgage, forty-four shares of the stock of the Montana Giant Petroleum Company and thereupon James released the mortgage. February 8, 1926,

$3,500 was borrowed from Hulda Hintz and a mortgage given her upon block 4. The money derived from this mortgage was used to take up the Capital Savings and Loan Association and the Dodge mortgages.

W. C. Pratt, on December 12, 1925, filed a petition in bankruptcy and was adjudged a bankrupt on the 14th day of that month. It thus appears that the transfer of the property to Fred Chitty was within four months of the time when the petition in bankruptcy was filed. Whether Meyer and wife held title to the property as security for an indebtedness due from Pratt or held it to prevent Pratt's creditors from reaching it, is a controversial question between the parties, but it will here be assumed that the Meyers held the property for Pratt because, had he taken title in his own name, some of his creditors whose claims had been reduced to judgment would have levied upon it.

There is much said in the briefs about the transfer to Chitty and his payment of the James mortgage by forty-four shares of the stock in the oil company. There is, however, nothing in the evidence which would justify a finding or an inference that this transaction was not what it purported to be upon its face. It was then thought, apparently by all parties, that the oil stock was of a salable value equal at least to the amount of the mortgage, even though subsequently the stock may have depreciated in value to a very great extent.

[1] We start, then, with the proposition that Meyer and wife held title for the purpose of protecting Pratt against the encroachment of his creditors and that the transfer to Chitty was *bona fide* and upon a consideration which the parties all believed to be equal to the balance due upon the mortgage.

Before the trustee in bankruptcy can disturb the conveyance, it is necessary that the transfer of which

he complains be made to a creditor of Pratt and that thereby the estate of the latter was depleted. In Collier on Bankruptcy (13th ed.), vol. 2, p. 1289, it is said:

"Though the words 'person' and 'creditor' are used interchangeably in this section, it is clear that only a creditor can receive a preference. A long line of decisions, many of them already referred to, are to the effect that the relief sought under this section extends only to an avoidance of a preference secured by the lender himself as a creditor, or as the practical agent of one who is a creditor."

R. C. L., vol. 3, p. 273, states the law to the same effect.

A transaction which works no detriment to the bankrupt estate and does not decrease the amount which would otherwise be received by creditors cannot be considered a preference. *McKay v. Sperry Flour Co.,* 95 Wash. 209, 163 Pac. 377; 7 C. J., p. 164; Collier on Bankruptcy (13th ed.), vol. 2, p. 1276.

From what has been said, it appears that Chitty was not a creditor of Pratt. There was no depletion of the bankrupt estate by the transfer to Chitty, because at that time the property was subject to the $3,570.20 James mortgage, the $400 Dodge mortgage and the $3,000 mortgage to the Capital Savings and Loan Association. The aggregate of these mortgages would be $6,970.20. Two witnesses testified as to the value of the property including the improvements placed thereon. One said that it was between $7,500 and $8,000, and the other that it was from $7,000 to $7,500. There is evidence that A. L. James, during the time that he held the deed, made out in blank for the benefit of his father, tried to sell the property for $5,500, and could not do so. We think that it sufficiently appears that the fair market value of the property, at the time of the transfer to Chitty, did not exceed the amount of

the three mortgages which were then against it in any substantial amount.

It is argued that Chitty took title to the property for the purpose of aiding Pratt in defeating his creditors and that Chitty had not acted in good faith. As already indicated, we are of the opinion that Chitty was acting in good faith and was not actuated by a desire to aid Pratt in defeating his creditors.

The judgment will be affirmed.

MACKINTOSH, C. J., HOLCOMB, FRENCH, and ASKREN, JJ., concur.