[No. 28682. Department Two. November 13, 1942.]

SEATTLE ASSOCIATION OF CREDIT MEN, *Appellant,* v. OLAF B. DANIELS *et al., Respondents.*[1]

[1]Reported in 130 P. (2d) 892.

*Patterson & Patterson,* for appellant.

*Caldwell, Lycette & Diamond,* for respondents.

BLAKE, J.—June 29, 1940, Eba's Inc. made an assignment for the benefit of creditors to Seattle Association of Credit Men. The assignee brought this action to recover, as a preference, a payment of $280.23 made by the assignor to the defendants, Daniels and Turnquist, on April 10, 1940.

The facts out of which the controversy arose are as follows: On or about February 9, 1940, Eba's Inc. entered into a contract with the defendants, who are building contractors, for the repair and alteration of the store front of premises occupied by the former at 500 Queen Anne avenue in Seattle. The work was done "on time and material basis plus 10% for overhead and profit." Payment was to be made *"upon presentation of receipted bills and pay roll . . . and when said bills for materials and pay roll have been audited and found correct to be paid in full."* (Italics ours.) The work was completed about February 15th. On March 22nd, defendants presented a statement, accompanied by receipted bills for labor and materials, amounting to $280.23. On the same day, the president of Eba's Inc. made the following notation on

the statement: "O. K. Pay about 10th of month." Accordingly, under date of April 10th, a check was issued in payment of the account.

In addition to the foregoing facts, the trial court found that Eba's Inc. was in possession of the premises under a lease giving it the right to make alterations and repairs on the building up to one thousand dollars, and that, *"if such repairs were made the lessee would pay a reduced rent to reimburse itself for said repairs"* (italics ours); that the president of Eba's Inc. discussed with, and had the consent of, the owner "the making of the said repairs by said Daniels & Turnquist"; that, if Daniels and Turnquist had not received payment as provided for in the contract, they "could have liened the said premises as security for the payment of the said sum due them." Accordingly, under the rule that a payment made by an insolvent to discharge a lien against its property does not constitute a preference, the court entered judgment dismissing the action. Plaintiff appeals.

The appeal presents two questions for determination: (1) whether respondents had a lienable claim against the property; and (2) whether the payment can be regarded as having been made for a present consideration rather than upon an antecedent debt.

■ *First.* If respondents had an enforcible lien, even though inchoate, for the work performed and materials furnished, the payment was not a preference. 4 Remington on Bankruptcy (4th ed.), p. 648, § 1709; *In re Lynn Camp Coal Co.*, 168 Fed. 998; *Stewart v. Hopkins*, 30 Ohio St. 502 (affirmed 104 U. S. 303, 26 L. Ed. 769); *Public Nat. Bank & Trust Co. v. Fortinberry*, 53 S. W. (2d) (Tex. Civ. App.) 113.

■■ We think, however, that respondents did not have an enforcible lien. In the first place, the lease under which the court found Eba's Inc. to be in possession of the premises did not run to Eba's as lessee.

The named lessee was Dutch Maid Foods Inc. The lease provided that "the lessee may assign this lease to Eba's Mutual Groceries, Inc., . . . and, upon acceptance of such assignment by and agreement of said company to perform the covenants of this lease, the lessee hereunder shall be released from all liability under this lease." Whether Eba's Mutual Groceries, Inc., and Eba's Inc. are one and the same corporation does not appear from the record. Assuming that it is, however, the assignment provided for in the above-quoted clause was never consummated by an agreement of Eba's Inc. "to perform the covenants of this lease."

So, as far as Eba's Inc. is concerned, there was no interest in the realty upon which a lien could be levied, for, at best, it was but a month to month tenant of Dutch Maid Foods Inc. But it is suggested by respondent that the latter and Eba's Inc. should be regarded as one and the same corporation because the stock of each corporation was owned by one and the same person. The evidence, however, falls far short of the requirements of the rule permitting corporate entities to be disregarded. To invoke that rule, something more than common ownership of stock and common management must be shown.

"In order to justify the judicial disregard of corporate identities, one, at least, of two things must clearly appear. Either the dominant corporation must control and use the other as a mere tool or instrument in carrying out its own plans and purposes so that justice requires that it be held liable for the results, or there must be such a confusion of identities and acts as to work a fraud upon third persons." *Pittsburg Reflector Co. v. Dwyer & Rhodes Co., Inc.,* 173 Wash. 552, 555, 23 P. (2d) 1114.

There is no such proof in this record. We are of the opinion, therefore, that Eba's Inc. had no lienable interest in the realty.

■ Nor did respondents otherwise have a lien against the realty, for at no time did they, as required by Rem. Rev. Stat., § 1133, notify the owner of the delivery of materials for use upon the property. In the absence of such notice, they could not assert a lien against the realty even though we should disregard the corporate entities of Dutch Maid Foods Inc. and Eba's Inc. For the agreement in the lease, with respect to the making and paying for repairs and alterations, was permissive. The lessee was under no obligation to make them, and was, therefore, in no sense the owner's agent. *Kremer v. Walton,* 16 Wash. 139, 47 Pac. 238; *Stetson-Post Mill Co. v. Brown,* 21 Wash. 619, 59 Pac. 507, 75 Am. St. 862; *Pioneer Sand & Gravel Co. v. Northern Pac. R. Co.,* 170 Wash. 618, 17 P. (2d) 9; *Miles v. Bunn,* 173 Wash. 303, 22 P. (2d) 985.

■ *Second.* It would seem clear that the payment made by appellant to respondents on April 10th was upon an antecedent debt. Under the express terms of the contract, the account was payable "upon presentation of receipted bills and pay roll," which was when "audited and found correct to be paid in full." The receipted bills and statement were presented, audited, and found correct on March 22nd. Payment was not then made. In other words, the account was not paid when due nor at the time the materials were furnished and the services rendered. Consequently, the respondents became general creditors of Eba's Inc. When payment was made on April 10th, it was for an antecedent debt and constituted a preference under Rem. Rev. Stat., § 5831-2 [P. C. § 4532-2]. *Seattle Ass'n of Credit Men v. Bank of California,* 177 Wash. 130, 30 P. (2d) 972. That the parties did not regard nor intend the transaction as an extension of credit, makes the payment nonetheless a preference. Nor does usage or custom in payment of bills make it any

less so. *In re John Morrow & Co.*, 134 Fed. 686. Of a closely analogous situation, the court in that case said, p. 687:

"If the parties, by agreement, can treat a sale of goods on 10 days' time as a cash transaction, they may also, by agreement, treat a sale on 30 or 60 days' or longer time as a cash transaction, and practically defeat the operation of sections 57g and 60a of the bankrupt act (30 Stat. 560, 562 [U. S. Comp. St. 1901, pp. 3443, 3445]). Sections 57g and 60a of the bankrupt act do not contemplate a usage of merchants or a conventional arrangement between the parties which would enable any one of the creditors of a bankrupt to obtain a greater percentage of his debt than any other of such creditors of the same class. A sale of goods to be paid for in 10 or 30 days is not, in fact, a cash transaction, and cannot, by agreement of the parties, or a usage of merchants, be regarded as such within the meaning of the bankrupt law."

The respondents put special reliance in the cases of *Terhune v. Weise*, 132 Wash. 208, 231 Pac. 954, 38 A. L. R. 94, and *Whiting v. Rubinstein*, 7 Wn. (2d) 204, 109 P. (2d) 312. These cases simply apply the rule that a payment made or security given for a valuable consideration presently passing to the insolvent corporation does not constitute a preference.

The judgment is reversed and the cause is remanded, with direction to enter judgment for appellant.

ROBINSON, C. J., BEALS, SIMPSON, and DRIVER, JJ., concur.