[No. 31231. Department Two. October 6, 1950.]

SEATTLE ASSOCIATION OF CREDIT MEN, *as Assignee, Appellant*, v. P. D. LUSTER *et al., Respondents.*[1]

[1]Reported in 222 P. (2d) 843.

*Todd, Hokanson & White* (*Stuart W. Todd,* of counsel), and *Leopold M. Stern,* for appellant.

*Vedova, Horswill & Yeomans* (*Robert D. Yeomans,* of counsel), for respondents.

ROBINSON, J.—This is an action brought to recover alleged preferences. Appellant, plaintiff below, is the Seattle Association of Credit Men, common-law assignee for the benefit of the creditors of Hosmer Associates, Inc., an insolvent corporation formerly engaged in the business of selling machinery and machinery parts. Respondent North End Machine Works, Inc., is a manufacturer of sawmill equipment, some of which it sold through Hosmer.

Hosmer executed an assignment for the benefit of its creditors on April 29, 1948. This action involves three checks, made payable to North End, and honored by Hosmer's bank within four months prior to that date. The suit is brought under the authority of Rem. Supp. 1941, §§ 5831-4(c) and 5831-6 [P.P.C. §§ 448-1, -5], which provide, in pertinent part, as follows:

"§ 5831-4. Words and terms used in this act shall be defined as follows: . . .

"(c) 'Preference' means a judgment procured or suffered against itself by an insolvent corporation or a transfer of any of the property of such corporation, the effect of the enforcement of which judgment or transfer at the time it was procured, suffered, or made, would be to enable any one of the creditors of such corporation to obtain a greater percentage of his debt than any other creditor of the same class."

"§ 5831-6. Any preference made or suffered within four (4) months before the date of application for the appointment of a receiver may be avoided and the property or its value recovered by such receiver. . . ."

The transactions giving rise to the payment of the checks in suit developed in the following manner: On December 23, 1947, Hosmer ordered a planer from North End, to be shipped to a lumber company in Georgia, and sent, with its purchase order, two checks drawn on Hosmer's bank account. Check No. 7346 was drawn for the exact amount, three thousand dollars, that Hosmer had previously received from the lumber company. This check, which, because it was paid by the bank prior to the commencement of the four-month period, is not in issue here, was accompanied by a memorandum reading as follows:

"With reference to the attached order, and in accordance with our agreement, we tender our check in the amount of $3,000.00 as the initial down payment on this shipment. We are also submitting our check for the balance with the distinct understanding that this check is to be held until the customer has paid for this shipment in full.

"This shipment is going forward, as you know, collect, S.D.B.L. and the machine cannot be delivered without the payment of this bill. We will immediately notify you upon its acceptance."

The second check, No. 7347, was for the sum of $5,335. This check was honored by the Seattle Trust & Savings Bank on January 20, 1948, within the four-month period.

On December 26, 1947, Hosmer ordered a resaw from North End, to be shipped to a company in Texas. Accompanying this purchase order were two checks, No. 7349, for $2,500, again representing a down payment, and No. 7350, for $1,900. No. 7349 was deposited immediately upon its receipt, and was paid by the bank on December 30, 1947, while No. 7350 was paid on January 12, 1948, both payments having again been made within the four-month period.

Under the rule of *Stern v. Lone*, 32 Wn. (2d) 785, 203 P. (2d) 1074, checks, cashed within the four-month period preceding application for the appointment of a receiver for the maker, effect a preferential transfer which may be avoided by the receiver, notwithstanding that the checks were delivered prior to the beginning of the period. But this is only true, of course, if the checks are cashed in payment of an antecedent debt. Before a preference may arise,

a transfer of the debtor's property must result in a diminution of the estate available for his other creditors. *Heaton v. Chitty*, 146 Wash. 634, 264 Pac. 417; 4A Remington on Bankruptcy (5th ed.) 265, § 1713. Accordingly, a transaction by which the debtor parts with something now in return for something he acquires now or is to acquire in the future, is not without the bounds of a valid transfer. The mere exchange of property of equal value within the four months preceding insolvency will not constitute a preference. 3 Collier on Bankruptcy (14th ed.) 819, § 60.19.

It appears to be the contention of respondents here that North End was never an antecedent creditor of Hosmer, since, as they allege, it was the understanding of the parties that North End was to retain title to the machines until Hosmer had paid for them. The agreements between Hosmer and North End, respondents assert, amounted to no more than contracts to sell, and the sales themselves did not take place until the checks, previously delivered by Hosmer to North End, were cashed. Thus, no credit was ever extended to Hosmer, and the sales were cash transactions, since title to the machines, in respondents' view, did not pass until the time that they received their money. From this it would follow that Hosmer's estate was in no degree diminished by the cashing of the checks, and it is respondents' position that there was, consequently, no preference and that *Stern v. Lone* has no application to the present situation.

The essential problem, therefore, is to determine when the sales transactions were consummated. If they remained executory until North End cashed the checks, then there was no preference in either of the transactions, for North End received adequate consideration for them at that time. If, on the other hand, the sales were complete when North End received the orders and released possession of the machines, the transfers of money resulting from the subsequent cashing of the checks, amounted to payments on an antecedent debt, and must be regarded as preferences.

■■ In spite of the repeated insistence of respondent P. D. Luster, sole proprietor of North End, that he only in-

tended to deal on a cash basis, it would seem that the latter is the correct view. Where the circumstances of the case indicate that a given transaction amounts to an extension of credit, it will be treated as such, regardless of whether the parties have so considered it. *Seattle Ass'n of Credit Men v. Daniels*, 15 Wn. (2d) 393, 130 P. (2d) 892. And, as Williston says:

"Confusion may be caused by use of the words 'cash sale' or 'terms cash' by business men. In business dealings these words are frequently used when in reality a short period of credit is contemplated. In such a case it is clear that there is no cash sale in the legal sense. Under the circumstances suggested, it is not contemplated that the buyer shall refrain in the meantime from dealing with the goods or even from reselling them, and if such is the contemplation of the parties, it is impossible to say that the property was not to pass until the price was paid." 2 Williston on Sales (Rev. ed.) 335, § 343.

The evidence in the present case indicates that North End parted with possession of the machines and acquiesced in their resale. Hosmer's agents, with knowledge of North End, made all arrangements to ship the machines to Hosmer's customers, with sight-draft-order bills of lading attached, made out to Hosmer's order, and naming the customers as the parties to be notified upon the arrival of the shipments. Hosmer's bank prepared the sight drafts at Hosmer's direction, and deposited the proceeds therefrom to Hosmer's account. Hosmer was then informed that this had been done, and it was only then that it, in turn, notified North End that the accounts had been paid, that the funds were available, and that the checks could be presented for payment.

It is thus apparent that North End parted with all dominion and control over the machines. Substantially the only evidence tending to show that it retained the title to them consisted of Mr. Luster's statements, made after the fact of Hosmer's insolvency, that it had been his intention to retain the title. Perhaps it was. The trial judge thought so. But whatever Mr. Luster's intention may have been, it could not alter the legal effect of his actions. If it was indeed his purpose to require that he be paid for the machines

prior to passage of title, he waived this requirement by permitting Hosmer to ship the machines to its own subpurchasers, sell them, and take over the proceeds, without insisting on payment in full. *Weyerhaeuser Tbr. Co. v. First Nat. Bank*, 150 Ore. 172, 38 P. (2d) 48, modified 150 Ore. 172, 43 P. (2d) 1078; *Northwest Hardware Co. v. M. & S. Logging Co.*, 132 Wash. 413, 232 Pac. 274.

The sales having been consummated on December 23rd and December 26th, respectively, North End became a creditor of Hosmer for the obligations in question on those dates. The cashing of checks Nos. 7347, 7349, and 7350 amounted to payments against these obligations, and, since they occurred within four months prior to Hosmer's assignment for the benefit of his creditors, must be held to have been preferential transfers within the meaning of Rem. Supp. 1941, § 5831-4(c). Appellent is, therefore, entitled to avoid them.

The judgment is reversed and the cause remanded, with instructions to enter judgment for appellant, as prayed for in its complaint.

SIMPSON, C. J., MALLERY, HILL, and HAMLEY, JJ., concur.

---

December 18, 1950. Petition for rehearing denied.