[No. 3412. Decided December 4, 1899.]

STETSON-POST MILL COMPANY et al., Appellants, v. ANNIE M. BROWN et al., Respondents.

MECHANICS' LIENS—BUILDING ON LEASED PREMISES—WHEN LESSEE AGENT OF OWNER.

Where a lessee of lands is accorded the privilege of erecting a building thereon, which shall become the property of the lessor on the termination of the tenancy, but the privilege is wholly optional with the lessee, and no enforceable contract exists whereby he is required to build, the fee cannot be subjected to mechanics' liens incurred by the lessee, as the lessee can in no sense be held to be the agent of the owner, under the statutory provision (Bal. Code, § 5900) that every person performing labor upon, or furnishing material to be used in, the construction of buildings has a lien thereon, whether performed or furnished at the instance of the owner of the property or his agent; and that any person having charge of the construction, alteration or repair of any property subject to lien shall be held to be the agent of the owner for the purpose of the establishment of the liens. (Kremer v. Walton, 11 Wash. 120 and 16 Wash. 139, distinguished.)

SAME—STATUTES—REPEAL.

Laws 1893, ch. 24, p. 32 (Bal. Code, §§ 5900-5918), being a complete act upon the subject of liens of mechanics and material men, and providing in § 2 that if the person causing the construction, alteration or repair of any building own less than a fee simple in such land, then only his interest therein is subject to the lien, and the repealing clause being to the effect that all acts or parts of acts in conflict with its provisions are thereby repealed, it must be construed that the act of 1893 works a repeal of Gen.

Stat. § 1671, which provides that should the owner of any land desire to prevent the lien from attaching, he may do so by giving notice in writing, posted in some conspicuous place upon said land or improvement, to the effect that he will not be responsible for said improvement.

Appeal from Superior Court, King County.—Hon. Frank T. Reid, Judge. Affirmed.

*John E. Humphries, William E. Humphrey, Harrison Bostwick, P. C. Ellsworth* and *Charles E. Shepard,* for appellants.

*Preston, Carr & Gilman* and *Bausman, Kelleher & Emory,* for respondents.

The opinion of the court was delivered by

Dunbar, J.—This is an action by the appellants, Stetson-Post Mill Company *et al.,* against Annie M. Brown *et al.,* respondents, to recover judgment for materials furnished for the erection of a building, and also to foreclose mechanics' liens upon the building and realty.

On February 23, 1898, Amos Brown and his wife, Annie M. Brown, and James D. Lowman and his wife, Mary R. Lowman, were the owners of a certain lot situated in Seattle, and on that day they leased the same to Ida M. Cort. The lessee mortgaged the leasehold interest, together with any building which she should erect under the terms of the lease, to respondent Parsons, to secure the payment of money loaned her by him, which money was used toward paying the cost of the building. Thereafter the lessee commenced the erection on the premises of a brick building, which was designed to be three stories in height, but after the erection of the first story, a temporary roof was put over the basement or first story, and no further building was done. The lessee let a contract to one Jones to construct the building aforesaid, under the terms of which the lessee was to pay Jones in installments as the

work progressed.   The contractor, Jones, bought lumber from the appellant Stetson-Post Mill Company for use, and which was used, in the building, which lumber has not been paid for.   The Seattle Gas & Electric Light Company furnished certain pipe fittings and light fixtures in the building, which have not been paid for.   The intervenor McDougall performed certain labor in plastering the basement of the building, which has not been paid for.   This labor was performed under contract with the lessee.   The intervenors Brown and Westover, also under contract with the lessee, did the plumbing for the basement of the building, a part of which has not been paid for.   The intervenor Viele, also under contract with the lessee, performed certain labor in painting, a portion of which only has been paid for.   Intervenor Richards, under contract with the lessee, furnished certain materials and performed labor in placing the temporary roof on the building, a part of which only has been paid for.   These several parties filed lien notices, and the Stetson-Post Mill Company commenced this action against the respondents for foreclosure of its lien, the several other claimants intervening to enforce their lien claims.

The right of the several lien claimants to enforce their liens against the interest of the lessee in the premises is not disputed by the respondents, and they were awarded that right by the judgment of the court.   The lien claimants, however, sought to impress their liens upon the fee; and it is also contended by them that their liens are prior to the lien of the mortgage in favor of Parsons.   The court adjudged the lien of the mortgage a prior and superior lien.

It has been the uniform holding of this court, as indicated by the decisions in *Iliff v. Forssell,* 7 Wash. 225 (34 Pac. 928) ; *St. Paul & Tacoma Lumber Co. v. Bolton,* 5 Wash. 763 (32 Pac. 787) ; *Mentzer v. Peters,* 6 Wash. 540

(33 Pac. 1078); *Z. C. Miles Co. v. Gordon,* 8 Wash. 442 (36 Pac. 265), and *Masow v. Fife,* 10 Wash. 528 (39 Pac. 140), that only the leasehold interest was subject to a lien for material furnished or labor performed. In fact, § 2 of chapter 24, of the Laws of 1893 (p. 32), especially provides "that if such person [referring to the builder] own less than a fee simple in such land, then only his interest therein is subject to the lien." The contention in this case arises over the construction of the statute (Bal. Code, § 5900) which provides that every person performing labor upon or furnishing material to be used in the construction of buildings, etc., has a lien upon the same for the labor performed or materials furnished by each respectively, whether performed or furnished at the instance of the owner of the property subject to the lien, or his agent; and provides, further, that every contractor, sub-contractor, architect, builder, or person having charge of the construction, alteration, or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purpose of the establishment of the lien created. It is contended that the lessee in the case at bar was the agent of the owner for the construction of this building, and it is insisted that the case falls within the rule announced by this court in *Kremer v. Walton,* reported in 11 Wash. 120 (39 Pac. 374, 48 Am. St. Rep. 870), and afterwards, upon rehearing, in 16 Wash. 139 (47 Pac. 238). In the first opinion rendered in that case it was held that, where a building had been erected and paid for by a lessee under an agreement that the lessor would repay the cost thereof by allowing the retention of rents by the lessee, the interest of the owner, as well as that of the lessee, was subject to lien for work and material furnished for the building. We think that case can easily and logically be distinguished from the one at bar. That decision was rendered upon a contract between the lessee

and lessor, which was introduced in evidence, or, rather, a letter, which contained the terms of the contract. There it was stipulated that the building which was to be erected by the lessee should be constructed under the supervision, and subject to the approval, of the lessor. The building was especially and minutely described, and its value fixed, and it was specified that the building was to be paid for by the lessee by applying the rental against the cost of the same. It was upon these conditions of the contract that that decision was rendered, and the court stated that if it had appeared that the building was to be erected by the lessee himself, his interest as such lessee would be all that could be subjected to the liens for work and materials furnished for said building; citing *Z. C. Miles Co. v. Gordon, supra.*

" On the other hand," said the court, "if, by the terms of the lease, the building was to be erected and paid for by the lessor, he would be the one who was erecting, even although the lessee was to have the direction and control of the erection. In our opinion, the terms and conditions of the lease were such that it must be held that the building was to be erected by the lessor."

It will be observed that the expression in the opinion, "even although the lessee was to have the direction and control of the erection," was purely *obiter dictum,* for, under the terms of the contract in that case, it was specially provided that the building was to be erected under the supervision, and subject to the approval, of the lessor. The court found that the contract of lease included an agreement between the lessor and lessee that the latter should erect for the former the building in question; that for that reason the interest of the lessor, as well as that of the lessee, was subject to the liens growing out of its erection; citing in support of its conclusion *Otis v. Dodd,* 90 N. Y. 336. That case is distinguished by the New York court of appeals in *Cornell v. Barney,* 94 N. Y. 394, where

it was held that, under a contract with the lessee for a building in process of construction by the latter, in pursuance of provisions in his lease by which he covenanted to erect a building on the demised premises of at least a specified value, and the lessor covenanted to loan a specified sum as the building advanced, to be secured by mortgage on the lessee's interest, in the absence of evidence that the lessor had some connection with the above contract, plaintiff was not entitled to have or enforce a lien against the interest of the lessor in the land or building, but only against that of the lessee. Section 1 of the lien act applicable to the city of New York (Chapter 379 of the Laws of 1875) was substantially the lien law of this state, which we are called upon to construe. The law which was construed by the New York court in the *Otis v. Dodd* case provided for a lien where a building was erected upon land with the consent of the owner, and the court held that it was a widely different statute from the one then in existence, which was passed in 1875 and is the one to which we have just referred.

When the case of *Kremer v. Walton* was again before the court in 1896, the former ruling was upheld, and it was announced that the owner of the land may be charged with mechanics' liens, through the construction of a building thereon by a lessee, when the contract between landlord and tenant, while, in effect, a lease, at the same time was equivalent to a building contract authorizing the lessee to proceed with the construction as the agent of the owner. This decision was also based upon the letter, which was presumed to embrace the substance of the contract, together with some other evidence, which plainly showed that the lessor was acting, not only with the consent, but under the direction, of the lessee. An entirely different state of affairs is shown by the lease in this case. The lease commences with the statement that "the lessors, in

consideration of the rents herein reserved and the covenants on the part of the lessee hereinafter contained, have demised and let," etc. It will be found that there are no covenants on the part of the lessee to erect a building. The lease provides a certain rent, which evidently did not take into consideration the value of any building for the erection of which permission was given. The terms of the lease were that rental was to be paid as follows: $200 per month for each and every month of the first two years of the term, $250 per month for each and every month of the third year of the term, $275 per month for each and every month of the fourth year of the term, and $300 per month for each and every month of the fifth year of the term; $600 having been paid in advance. The permission to build is couched in the following language:

"And the lessors do further grant to the lessee the privilege to build on the premises described a brick building, the same to conform in kind and quality of material and dimensions of walls and construction of partitions to the ordinance of the city of Seattle known as the building ordinance."

There is a further provision that at the expiration, or sooner, if the lease is terminated for any cause, the lessee will quit the premises and yield and surrender possession thereof to the lessors; and, if any buildings are erected upon the same, they shall remain a part of the realty and the property of the lessors, without payment or contribution. It is true that no sensible or right distinction can be drawn between a case where the lessor agrees to pay in cash for a building which is contracted to be erected upon the leased premises and one where the building is to be paid for either wholly in rent or by a diminution of the actual rental value. In either case the value of the building enters into the consideration of the lease and is an element of value which is considered. But that state of

40—21 WASH.

facts does not exist in this lease. There is no particular building contracted for here. The lessee does not contract to erect a building of any kind. Her lease is perfect and enforceable up to the end of the time for which the lease is given, whether she erects a building or not. There is no basis in this lease for an action against her by the lessors either to shorten or annul her lease for not building, to compel her to build, or to obtain damages for her failure to build. She has in no way made herself responsible for a building, and, even if the lease could be construed into a responsibility, the absence of specifications would render it a nullity. Under the terms of this lease, if it should be held that she was obligated to build at all, a building costing $100 would meet the requirements of the lease as well as a building which would cost $100,000. So that it must be held that the value of the building was in no sense an element which was taken into consideration in fixing the rental value.

A very ingenious argument is offered by the appellants in their reply brief to the effect that courts must take into consideration the ordinary business sense of people who are entering into contracts, and that between the lines of this contract it can be read that the erection of the building and the use to be made of it was the real inducement to one party, and probably to both, and that such erection was intended when the lease was made, although it was stated as a mere privilege and not as a covenant. It would be dangerous for courts in construing contracts to ignore the plain wording of the contract and speculate, by the aid of whatever business knowledge the court might possess, in relation to the supposed actual meaning of the parties, which they had not seen fit to express. If there are any hardships which are liable to be worked upon furnishers of material or labor through the enforcement of the law as it now exists, "it is better," in the language of the

appellate court of New York in the case of *Cornell v. Barney,* to which we have above referred, "to leave any amelioration or improvement of the law which may be needed to the legislature, than by a forced and unnatural construction of the language used in this act to seek for a legislative purpose not apparently expressed." The same rule should apply to the construction of contracts.

It is contended that the case of *Z. C. Miles Co. v. Gordon, supra,* is not in point, but we think it is. It is true that in that case the lien was sought to be enforced for improvements made upon property which was already in existence, but the principle would be identically the same, whether a newly erected building were to pass into the possession and ownership of the lessor or an old building, the value of which had been enhanced by improvements during the lease. It is insisted, in addition, by the appellants that the respondents in this case could escape liability in any event only by complying with the provisions of § 1671, 1 Hill's Code, which provides that "should the owner or owners of any land desire to prevent the lien from attaching . . . he or they may do so by giving a notice in writing, posted in some conspicuous place upon said land or improvement, to the effect that he or they will not be responsible for said improvement," etc. We think that it was the legislative intention to repeal this statute by the act of 1893 (ch. 24, p. 32), creating and providing for the enforcement of liens for labor and material. In § 2 of this act is a proviso that, if such person own less than a fee simple in such land, then only his interest therein is subject to the lien. The act seems to be complete in itself, and the repealing clause is to the effect that all acts or parts of acts in conflict with the provisions of the act are thereby repealed. The provision in relation to the notice, it seems to us, is in conflict with the express provision in this act that, if such person own less than a

fee simple in such land, then only his interest therein is subject to the lien. In any event, this act has in many cases been construed by this court against the contention of the appellants.

The further contention that the liens in this case were superior to the mortgage of Parsons was decided by this court adversely to the appellants' contention in *Home Savings & Loan Association v. Burton,* 20 Wash. 688 (56 Pac. 940).

No error having been committed by the court in any respect, the judgment will be affirmed.

GORDON, C. J., and FULLERTON and REAVIS, JJ., concur.