[No. 12890.   Department Two.   December 18, 1915.]

WARNER DAHLMAN *et al.*, *Respondents and Cross-Appellants*,
v. GEORGE H. THOMAS *et al.*, *Appellants*, MT. BAKER
MINING COMPANY *et al.*, *Respondents.*[1]

MECHANICS' LIENS—TITLE OR INTEREST SUBJECT—LABOR PERFORMED
FOR VENDEE—LIABILITY OF OWNER—STATUTES.   Under Rem. & Bal.
Code, §§ 1129, 1130, giving a mechanics' lien to any person who per-
forms labor in any mine, the owner of a mine is shown to be a prin-
cipal for the purpose of liens, and its interest is subject to liens for
labor performed at the instance of a lessee or vendee, where the con-
tract granted an option to purchase, and the vendee agreed to begin
mining and pay royalties until payment of the first installment of
the purchase price, which it was not obligated to make for four
years, the royalties not applying on the purchase price; since the
owner required the vendee to make improvements and retained part
of the profits, and made the vendee an agent to create a benefit to
the owner's interest.

SAME—LIABILITY OF OWNERS—POSTING OR RECORDING NOTICE.   Such
lien against the owner's interest could not be defeated by posting a
notice of disclaimer; nor by recording the contract giving notice that
the vendee agreed to furnish a bond against liens and was an occu-
pant under "bond and lease;" as the contract itself gave notice of
the owner's principalship.

Cross-appeals from a judgment of the superior court for
Whatcom county, Hardin, J., entered January 22, 1915,
upon findings in favor of the plaintiffs, in an action to fore-
close a mechanics' lien, tried to the court.   Modified on plain-
tiffs' appeal.

*Walter B. Whitcomb*, for plaintiffs.

*Tucker & Hyland*, for defendants.

BAUSMAN, J.—Action for the foreclosure of miners' liens
under Rem. & Bal. Code, § 1129 (P. C. 309 § 53), against
the Mount Baker Mining Company, owner of the land, and
Boundary Gold, a corporation having, by assignment from
defendants Thomas and Clark, a contract right to purchase
the property from the owner.   The lower court allowed the

[1]Reported in 153 Pac. 1065.

liens against the interest of Boundary Gold, but not against the Mt. Baker Company's, entering personal judgment at the same time against Thomas and Clark. Neither Boundary Gold nor the Mt. Baker Company appealed. Thomas and Clark did appeal, and the plaintiffs prosecute a cross-appeal on the ground that they should have had liens against the interest, not merely of Boundary Gold, but of the Mt. Baker Company as well.

The appeals of Thomas and Clark are quickly disposed of, since they raise only a contention of fact—whether they, rather than Boundary Gold, employed these men. The lower court found against them in that respect, and there is nothing in the evidence, carefully perused, to tempt us to disturb that finding. We are accordingly concerned now with the cross-appellants, who, admitting that the owner in fee is ordinarily immune from liens through a lessee or vendee in possession, contend for an exception here because of the contract between the Mt. Baker Company and Thomas and Clark, assigned to Boundary Gold.

The general lien statute, Rem. & Bal. Code, § 1129, is, as to miners, as follows:

"Every person performing labor upon . . . in the construction, alteration or repair of any mining claim . . . or who performs labor in any mine . . . has a lien upon the same for the labor . . . whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor, sub-contractor, architect, builder or person having charge of the construction, alteration or repair of any property subject to the lien . . . shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter."

An earlier statute enabled the owner to post a notice of disclaimer against such obligations as these. This disappeared, however, in subsequent legislation, which to the general lien statute added a proviso, "that if such person own less than a fee simple in such land, then only his interest therein is sub-

ject to the lien," the words "such person" meaning, of course, the person who, other than the owner himself, had caused the work to be done (*Stetson-Post Mill Co. v. Brown*, 21 Wash. 619, 59 Pac. 507, 75 Am. St. 862) ; and this proviso, altered, but in substance, is preserved in Rem. & Bal. Code, § 1130 (P. C. 309 § 57). Our statutes accordingly, while taking away any privilege of the owner to strengthen his situation by posted notice, exempt him from contracts which are purely those of the occupant.

We start with the presumption, therefore, that the owner of the land is exempt. It does not follow, though, that these words of exemption are a shield against obligations really, though indirectly, his own. A lease may be such only in name, a contract of purchase only a mere form. There must not be left an easy opportunity for subterfuge or fraud against laborers and supply men. And, even if the instrument be a lease in truth or a sale in truth, it may contain provisions that ought to be construed as making the lessee or vendee an agent to create something which the owner himself desires for the property, and which tends to benefit his own interest. Hence the courts, seldom binding the vendor's property through a vendee who makes improvements of his own volition, almost always bind it under such contracts of sale as distinctly authorize the improvements. *Henderson v. Connelly*, 123 Ill. 98, 14 N. E. 1, 5 Am. St. 490; *Davis v. Humphrey*, 112 Mass. 309; *Bohn Mfg. Co. v. Kountze*, 30 Neb. 719, 46 N. W. 1123, 12 L. R. A. 33; *Hill v. Gill*, 40 Minn. 441, 42 N. W. 294; *Shapleigh v. Hull*, 21 Colo. 419, 41 Pac. 1108. Such decisions rest sometimes on estoppel and sometimes on implied agency.

As for this court, in *Kremer v. Walton*, 11 Wash. 120, 39 Pac. 374, 48 Am. St. 870, we held a landlord liable in lien for a building erected by the tenant who had an express agreement with him to erect it and get payment by having its use without rent. To that opinion we adhered in the same case later (16 Wash. 139, 47 Pac. 238), where we said:

"That a contract may be in effect a lease, and at the same time a building contract, as to mechanics and material men, is clearly shown by the following cases."

Nor did we still later desire to recede; for in *Stetson-Post Mill Co. v. Brown*, 21 Wash. at pages 622-624, 59 Pac. 507, 75 Am. St. 862, we reaffirmed *Kremer v. Walton*, merely distinguishing it; and in the subsequent case of *Bell v. Swalwell Land, L. & T. Co.*, 20 Wash. 602, 56 Pac. 401, we subjected a vendor's interest in the improvement to his defaulting vendee's debt, by reason of improvements contemplated (and becoming a part of the land, if made), though not required in the sale. Those improvements were made with the owner's knowledge after the vendee was in default to him, but the lien was claimed only as to the improvements which were ordered removed to satisfy the lien. The effect of that decision was an estoppel against the vendor to claim as part of the fee what he had bargained should pass to it.

Turning to the present instance, the Mt. Baker Company gave an option on the property at $75,000, to Thomas and Clark, who in return obligated themselves to begin mining with seventy-five shifts of labor per month, and to pay a royalty to the Mt. Baker Company of twelve and one-half per cent of the gross receipts, until they should have paid a first installment of $25,000 on the purchase price. This first payment they were not obligated to sooner than four years, yet the royalties were not to be deducted from the purchase price at all. The contract also provided for the usual forfeitures in case of failure either to pay royalties or to perform any other condition, and this forfeiture distinctly included the vendees' loss of all improvements and machinery by them installed. There was to be a bond against liens to the Mt. Baker Company. Finally, it was stipulated that the contract be recorded (which was done), and that a notice be posted upon the property, disclaiming in the name of the Mt. Baker Company that the latter was to be bound for liens,

but stating that the occupants were Thomas and Clark under "bond and lease."

*Kremer v. Walton, supra,* we have seen, remains undisturbed by our subsequent decisions. In *Stetson-Post Mill Co. v. Brown, supra,* we noticed that there was no obligation on the lessee's part to erect a building, whereas in the *Kremer* case it was remarked that there was. In *Miles Co. v. Gordon,* 8 Wash. 442, 36 Pac. 265, a sanitarium was leased and the landlord was to have a portion of the profits, but there was no obligation or authorization respecting improvements by the tenant. The latter then put in a steam-heating plant, for which a lien was claimed against the fee on an argument based on the landlord's share in the profits. What this court held was that the lease constituted no partnership because the landlord's profits were merely rents for which there was no other provision. *Northwest Bridge Co. v. Tacoma Shipbuilding Co.,* 36 Wash. 333, 78 Pac. 996, exempted the owner from liens through a vendee who was required to make the improvements, but there was no profit-sharing by the owner.

Summing up these cases, they have relieved the landlord when he had profits but had not authorized improvements, and have relieved a vendor when he had authorized the improvements but had no interest in the profits. In the present case the owner has both features against him.

The statute we are now asked to apply is the general one for mechanics and materialmen. These laws were invented to meet a previous state of things when owners of land, dealing through contractors or other third persons, were often enabled to keep valuable improvements that nobody had paid for, with permanent loss to laborers and materialmen whose disposition to give credit was not to be discouraged. It was found that, though hardship must sometimes occur to the owner of land by lien laws, he at least receives and keeps the improvements, and that he is the better able of the two classes, by indemnity beforehand, to protect himself entirely.

Keeping all this, then, in view, we have no disposition to extend the doctrine of *Northwest Bridge Co. v. Tacoma Shipbuilding Co., supra,* which is more favorable to the owner than are similar cases in most other jurisdictions. We are clear that where, as in the present case, the owner both requires his vendee to improve the property and is to enjoy some of the profits, he must either take indemnity against liens or bear the burden of them. For, if the laborers' liens in this case can be defeated, we must, under the same section, expose too numerous a class of both laborers and supply men to loss, and enable mine and land owners to develop or improve their properties through third persons under contracts of which the principal feature is the development or improvement. The legislature, we are clear, intended no such possibility, whether by feigned or actual sale.

The supreme court of Colorado, under a lien statute not dissimilar in its agency features (*Hendrie & Bolthoff Mfg. Co. v. Holy Cross Gold Min. & Mill Co.,* 17 Colo. App. 341, 68 Pac. 785), has thus construed the consequence of an option to purchase a mine in which the improvement was required and the profits to be divided; and the California supreme court in *Higgins v. Carlotta Gold Min. Co.,* 148 Cal. 700, 84 Pac. 758, 113 Am. St. 349, under statutory provisions also sufficiently close to ours to support our conclusion.

We do not overlook the posting of disclaimer by the Mt. Baker Company. This was ineffective. When a contract makes the owner a principal for the purposes of liens, our statute does not permit him to shake these off by posting a paper which the rain of a single night may wash away. Suppose the company, without giving any option of purchase, had merely required Boundary Gold to conduct mining and divide its profits. Could it thus develop its property, make money out of it, and yet be free from the lien by a posted disclaimer never heard of perhaps by distant supply men, or never read or understood by uneducated laborers?

Nor is the Mt. Baker Company to be relieved here by its having placed the contract on the public records. That fact, so far from impairing these liens, would tend to strengthen them, since we pronounce this contract to be one that of itself subjected the property to the lien laws.

The cross-appeal is sustained, and the judgment of the lower court is modified so as to include the property of the Mt. Baker Mining Company in plaintiffs' liens.

MORRIS, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.