[No. 22205. Department Two. April 1, 1930.]

SEATTLE LIGHTING FIXTURE COMPANY, INCORPORATED, *et al., Plaintiffs,* v. BROADWAY CENTRAL MARKET, INCORPORATED, *Defendants,* CHARLES HAYNES *et al., Respondents,* NORTHERN BOND & MORTGAGE COMPANY *et al., Appellants.*[1]

[1]Reported in 286 Pac. 43; 286 Pac. 1119.

*Allen, Froude, Hilen & Askren,* for appellant Pioneer Securities Co.

*Bogle, Bogle & Gates,* for appellant Northern Bond & Mortgage Co.

*Byers & Byers* and *Alfred J. Westberg,* for respondent Haynes.

*Herr, Bayley, Croson & Innis* and *F. Bartow Fite, Jr.,* for respondent Fryer & Co.

FRENCH, J.—This is an appeal from a judgment and decree foreclosing the lien claims of respondents against the fee title to certain real estate. One of the appellants is the owner of the fee and the other appellant holds a mortgage on the leasehold interest.

On January 31, 1928, a lease was entered into between the Pioneer Securities Company and the Broadway Central Market, Inc., under the terms of which the property involved in this action was leased for a period of ninety-nine years. Section 3 of the lease provided:

"Section 3. The lessee covenants and agrees, and such agreement is a consideration for the execution of this lease, that it will on or before the first day of February, 1928, commence the erection upon the leased premises of a building 350' x 60' in dimension, of reinforced concrete, faced with brick and trimmed with terra cotta or artificial stone; the foundation of said building shall be constructed in such manner so that they will be sufficient for additional stories for either of the following uses: (a) for one additional floor for use as a public hall, or (b) two (2) additional floors constructed for use as apartments. The lessee shall pave with concrete the vacant space in the rear of said building and construct and maintain the same for the purpose of parking and standing vehicles. The said building shall be constructed substantially as shown in

the plans and specifications which have been approved in writing by the parties hereto, such approval being indicated in writing upon the said plans, and in good, workmanlike manner, and in all respects in compliance with the laws of the state of Washington and the ordinances of the city of Seattle and the regulations of the departments of said city, and the lessee shall diligently carry on the erection of said building and complete the same on or before July 1, 1928, all at its own cost and expense. Time is of the essence. But if the lessee should in good faith be delayed in the construction of said building by any strike, lockout, fire, or other casualty beyond its reasonable control, then the period of delay necessarily caused thereby shall be added to the time limit provided for such construction and erection; provided, however, that the lessee notifies the lessor of the occasion of such delay immediately upon the happening or occurrence of any such cause for delay, and provided further that the lessee shall not be in arrears in the payment of the rental for said leased premises.

"The lessee shall pay for all labor and material and all other charge and expense incurred or occasioned in the erection and construction of said building and not permit any lien to be filed against said property or any part thereof.

"Said building shall as fast as the same is erected, immediately be and become a part of the realty and be owned by and belong to the lessor, and the said lessee shall have no estate, right or interest in or to said building except as tenant thereof under and in accordance with the terms of this lease.

"BOND TO BE GIVEN.

"Section 4. To secure and insure the full and faithful performance of said lessee's covenants and agreements concerning the erection and completion of and payments for said building provided for in the foregoing section 3, the lessee shall contemporaneously with the execution of this lease and prior to the commencing of the erection of said building, execute and deliver to the lessor a bond in the sum of one hundred thousand dollars ($100,000), payable to the lessor,

with a surety company legally authorized to do business in the state of Washington satisfactory to the lessor as surety conditioned for the erection and completion of said building provided for in said Sec. 3 above, within the time therein mentioned and in accordance with the provisions of said Sec. 3, and to pay for all labor, material and other charges and claims of every kind and nature incurred in the erection and construction thereof so that the said building when completed shall be free and clear from all liens and/or claims of liens for labor and/or material or other charge.

"No AUTHORITY OF LESSEE TO BIND LESSOR.

"Section 5. The lessee shall have no right, authority or power to bind the lessor or any interest of the lessor in said leased premises for the payment of any claim for labor and/or material or for any charge or expense incurred in the erection or construction of said building, nor to render said leased property liable for any lien or right of lien for any labor, material and/or any other charge or expense incurred in connection therewith, and shall in no wise be considered the agent of the lessor in the construction and/or erection of said building."

This lease was recorded February 14, 1928. Thereafter respondent Fryer & Company furnished material and labor for said building, which labor and material was furnished at the request of the lessee, the evidence showing that the labor performed and the material furnished was performed and furnished between the 4th day of June and the 15th day of July, 1928, and was of the value of $975, and that a lien was properly filed therefor.

The lease, as heretofore stated, was entered into on the 31st day of January, 1928. Prior to that time, one Arthur Gerbel had evolved the plan of leasing the property in question and erecting thereon the Broadway Central Market. There was, of course, a considerable period of time during the latter part of the year

1927 when preliminary negotiations were going on between the owner of the property and the prospective lessee. As a part of these preliminary negotiations and for the ultimate purpose, of course, of inducing the owner of the property to enter into this lease, Gerbel had Charles Haynes, an architect, prepare certain plans and specifications for the proposed market building to be built upon the premises in question.

These various negotiations finally culminated in the lease executed January 31, 1928. Gerbel in the meantime having formed a corporation known as the Broadway Central Market, Incorporated, the building in question was to be erected in accordance with the plans and specifications which Mr. Haynes had prepared for Arthur Gerbel. Shortly after the execution of the lease, the erection of the building was undertaken and Haynes supervised the construction thereof. His claim of lien is for architect's fees in preparing the plans and specifications, and for supervising the construction of the building.

In so far as the claim of Fryer & Company is concerned, the only question involved is whether or not it is a valid lien against the fee.

We have here a situation where the owner of property giving a long-time lease thereon has, by the terms of the lease, required the erection of a building, which building immediately becomes the property of the owner, and, of course, to that extent enhances the value of the fee, and provides security for the payment of the rent. The question really is, under such circumstances, Is the lessee the statutory agent of the owner for the purpose of the creation of the lien?

Our lien statute reads as follows:

"Every person performing labor upon or furnishing material to be used in the construction, alteration or

repair of any mining claim, building, wharf, bridge, ditch, dyke, flume, tunnel, well, fence, machinery, railroad, street railway, wagon road, aqueduct to create. hydraulic power or any other structure or who performs labor in any mine or mining claim or stone quarry, has a lien upon the same for the labor performed or material furnished by each, respectively, whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor, subcontractor, architect, builder or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter; Provided, that whenever any railroad company shall contract with any person for the construction of its road, or any part thereof, such railroad company shall take from the person with whom such contract is made a good and sufficient bond, conditioned that such person shall pay all laborers, mechanics and materialmen, and persons who supply such contractors with provisions, all just dues to such persons or to any person to whom any part of such work is given, incurred in carrying on such work, which bond shall be filed by such railroad company in the office of the county auditor in each county in which such work is situated. And if such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor.'' Rem. Comp. Stat., § 1129.

We think this a question of first impression in this state. As far as cases from other states are concerned, they have but little value in determining a question such as this, for the reason that a lien is purely statutory, and the statutes of the different states are, generally speaking, so differently worded that decisions interpreting them prove of little assistance in determining questions relative to lien foreclosures under our statute.

The state of Oregon, however, has a lien statute which is substantially the same as that of our own state. Speaking on the question, the supreme court of Oregon, in the case of *Oregon Lumber & Fuel Co. v. Nolan*, 75 Ore. 69, 143 Pac. 935, 146 Pac. 474, said:

"The terms of the contract between himself and Blanchard required the latter without any choice on his part to construct a building. Although this stipulation was coupled with a lease and an option to purchase the premises, yet its legal effect is to make Blanchard a contractor for the erection of a building which, by the terms of the contract, was eventually to become the property of Nolan and to increase the value of his holdings."

Further on in the same case, relative to the provision in the contract which attempts to abrogate the statute relative to agency, the court says:

"Laborers and materialmen, covenanting with Blanchard either directly or through subcontractors, have rights in the premises arising by operation of law which Nolan and Blanchard cannot destroy by contract between themselves. Although each for himself could properly stipulate to waive the provisions of the statute in his own favor, yet without the consent of materialmen who are strangers to that contract, they cannot waive nor impair the rights which the law confers upon such claimants. *Hume v. Seattle Dock Co.*, 68 Ore. 477, 137 Pac. 752, 50 L. R. A. (N. S.) 153."

Our own court, touching on certain phases of this question which are in a way here involved, has exhaustively reviewed all our prior decisions in the case of *Dahlman v. Thomas*, 88 Wash. 653, 153 Pac. 1065, and there stated the rule to be that,

"Summing up these cases, they have relieved the landlord when he had profits but had not authorized improvements, and have relieved a vendor when he had authorized the improvements but had no interest in the profits. In the present case the owner has both features against him."

So, in the instant case, the owner of the fee has by his lease contracted for the erection of the building. It is to become his building. It is to secure him in the payment of his rents. He has a direct and beneficial interest in having this building erected strictly in accordance with the plans and specifications as prepared.

We hold that, where a lease such as this provides by its express terms that the lessee must erect a building on the property, such provision makes the lessee the statutory agent of the owner, and that the agency created by the statute cannot be annulled by reason of any provisions to the contrary in such contract. The judgment is affirmed as to the respondent Fryer & Company.

A different question, however, is presented as to the lien claim of respondent Haynes. Mr. Haynes prepared the plans and specifications of this building some time in the latter part of the year 1927. These plans and specifications were completed and delivered to Mr. Gerbel long prior to the time when the lease in question was executed, and at a time long prior to the time when either Mr. Gerbel or the Broadway Central Market, Inc., had any interest whatsoever in the land. There is evidence showing that Haynes supervised the construction of the building after the lease was made. The evidence shows also that a considerable portion of the sum claimed by Haynes for preparing the plans and specifications and for this work of supervision had been paid to him, and that the amount of his lien claim was for a balance due, the claimed balance being $950.

But there is no evidence from which we can segregate the amounts, no evidence showing the application of the moneys received, and it is uncertain whether the entire $2,100 that is claimed was for the preparation of the plans and specifications, or was partly for

the plans and specifications and partly for the supervision. Under the facts in this case, at the time the plans and specifications were prepared, completed and delivered, Mr. Gerbel was not in any way authorized to bind the owner of the property. If we have correctly gathered the facts from the record, the Broadway Central Market had not even been incorporated at the time the plans and specifications were prepared and delivered.

We hold that, at the time the work and labor of the preparation of the plans and specifications for this building was performed, Mr. Gerbel was not the agent or authorized in any way to represent the owner of the property, and that that item therefore is not a lienable item as against the record owner or the mortgagee. The evidence failing to show what part, if any, of this amount was for supervising the construction, and not tending to show the application of the moneys received, the claimed lien being only for the balance due, the action of respondent Haynes should be dismissed.

██ Respondents have also applied for additional attorneys' fees. The court found that $150 was a reasonable attorneys' fee to be allowed in this action, and no exception was taken to the finding, and it is therefore binding on us. Also this court has adopted the rule that additional attorneys' fees will not be allowed in the supreme court in lien foreclosures.

The judgment will be modified in accordance with this opinion.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.

### ON PETITION FOR REHEARING.

[Department Two. April 8, 1930.]

PER CURIAM—The attention of the court having been called to the fact that J. G. Price, Inc., one of the de-

198

fendants herein, on July 6, 1926, gave notice of appeal, and duly filed its appeal bond, and thereafter failed to perfect such appeal by any appearance in the supreme court, the said appeal of J. G. Price, Inc., is dismissed, and the opinion of the court heretofore filed shall be corrected to so show and the judgment as to J. G. Price, Inc., be affirmed.

