[No. 24040. Department One. December 21, 1932.]

PIONEER SAND & GRAVEL COMPANY, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant,* HARRY R. POWELL *et al., Respondents.*[1]

*L. B. daPonte* and *Thos. H. Maguire,* for appellant.

*Merrick & Kelly, Daniel Backer, Bayley & Croson,* and *F. Bartow Fite, Jr.,* for respondents.

PARKER, J.—The plaintiff sand and gravel company commenced this action in the superior court for King

[1]Reported in 17 P. (2d) 9.

county, seeking foreclosure of its lien claim for material furnished to the defendant The A. R. Turner Company for the construction of a building constructed by that company upon land belonging to the defendant Northern Pacific Railway Company; the lien claim being asserted against the land of the railway company, as well as against the building. Others, having furnished labor or material to the Turner company for the construction of the building, became parties to the action, seeking foreclosure of their lien claims thereon against the building and the land. Trial in the superior court resulted in a decree awarding foreclosure against the land, as well as against the building, in favor of the sand and gravel company and several other claimants, parties to the action. The railway company alone has appealed to this court from the decree, in so far as it awards foreclosure of the lien claims against its land on which the building was constructed.

The facts with which we are here concerned are not in dispute, and, we think, may be sufficiently summarized as follows: In January, 1931, the railway company, as lessor, and the Turner company, as lessee, entered into a lease contract by which the railway company leased to the Turner company a small tract of land in close proximity to the tracks of the railway company, in the city of Seattle. The agreed term of the lease is five years, being from January 1, 1931, to December 31, 1935, and the agreed rental is $538.20 per year. Other provisions of the lease so far as need be here noticed, are as follows:

"The lessee will pay before the same become delinquent all taxes and assessments, general and special, assessed during the term against the premises or the improvements thereon. In case of non-payment of rental or taxes the same shall, until paid, constitute a

lien upon any building or other property owned by the lessee located upon the premises, and the lien may be foreclosed according to law.

"The lessee will occupy and continue to use the premises during the term for the purpose of site for manufacture of paper roofing and shingles, and no other; and, . . . will begin the construction immediately and complete as soon as practicable a substantial building for said purpose according to plans and specifications submitted to and approved by the Division Superintendent of the Railway Company in advance of construction, and in event of destruction thereof in whole or in part will within three months thereafter commence the work of repairing or rebuilding and complete the same within twelve months from said destruction. . . .

"If the Railway Company shall require the premises for railroad purposes at any time during the term, . . . it may terminate this lease upon written notice of not less than six months; but in case of such termination the Railway Company shall purchase from the lessee all his improvements, and pay a sum equal to their actual value at the time such notice is given, which shall not exceed the cost at the time of new similar improvements, with proper allowance for actual depreciation. . . . But the value of such improvements so to be paid shall not exceed the sum of Six Thousand and no/100 ($6000) dollars. . . .

"The lessee will deliver up the premises at the end of the term peaceably and quietly, and if he fails to remove therefrom any material, building or property before the termination of this lease, either by lapse of time or by notice under this paragraph, the Railway Company may appropriate such property to its own use without compensation, or may remove the same at the cost of the lessee. . . ."

Soon after the execution of the lease, the Turner company commenced the construction of a building upon the land in pursuance of the provisions of the lease contract, above quoted. During the course of such construction, the claimants, whose liens were foreclosed by

the decree, furnished labor and material for such construction. The building evidently was completed about the last of April, 1931, though the record does not make it clear just when the building was completed. The building foundation is concrete, set in a permanent manner in the ground and extending above the surface of the ground. Above the foundation, the building is of wood construction.

It is contended in behalf of the railway company, in substance, that its land cannot be lawfully subjected to the lien claims of these several claimants, as awarded by the superior court, because the building was not constructed with a view of becoming the property of the railway company, or with a view of becoming a part of the land as realty.

Our mechanics' lien statute, so far as need be here noticed, reads as follows:

"Every person performing labor upon or furnishing material to be used in the construction, alteration, or repair of any . . . building, . . . has a lien upon the same for the labor performed or material furnished by each, respectively, whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor, subcontractor, architect, builder or person having charge of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter: . . ." Rem. Comp. Stat., § 1129.

"The lot, tract or parcel of land upon which the improvement is made or the property is situated, subject to the lien created by section 1129, *supra,* or so much thereof as may be necessary to satisfy the lien and the judgment thereon, to be determined by the court on rendering judgment in a foreclosure of the lien, is also subject to the lien to the extent of the interest of the person or company, who in his or its own behalf, or who, through any of the persons designated in section

1129 to be agent of the owner or owners caused the performance of the labor, or the construction, alteration or repair of the property." Rem. Comp. Stat., § 1130.

We have held that the construction of a building by a lessee upon land held by him as lessee, in pursuance of a mere lease contract privilege so to do, does not, under these statutory provisions, constitute such lessee the agent of such lessor owner so as to effectually charge the land with lien claims of mechanics and materialmen furnishing labor and material for the construction of such building. *Stetson-Post Mill Co. v. Brown,* 21 Wash. 619, 59 Pac. 507, 75 Am. St. 862.

We have also held that the construction of a building by a lessee upon land held by him as lessee, in pursuance of a lease contract with his lessor owner, obligating him so to do, does, under these statutory provisions, constitute such lessee the agent of his lessor owner so as to charge the land with lien claims of mechanics and materialmen furnishing labor and material for the construction of such building when it is to remain upon the land as part thereof as realty. *Kremer v. Walton,* 11 Wash. 120, 39 Pac. 374, 48 Am. St. 870; *Kremer v. Walton,* 16 Wash. 139, 47 Pac. 238; *Dahlman v. Thomas,* 88 Wash. 653, 153 Pac. 1065; *Finos v. Netherlands American Mortgage Bank,* 147 Wash. 86, 265 Pac. 167; *Seattle Lighting Fixture Co. v. Broadway Central Market,* 156 Wash. 189, 286 Pac. 43, 1119.

All of our decisions above noticed are in harmony with numerous decisions of the courts of other states where the question arises under lease contracts or under executory contracts for purchase of land. Among these decisions, we notice the following in chronological order of their rendering: *Hall v. Parker,* 94 Pa. St. 109; *Henderson v. Connelly,* 123 Ill. 98, 14 N. E. 1, 5 Am. St. 490; *Hill v. Gill,* 40 Minn. 441, 42 N. W. 294;

*Bohn Mfg. Co. v. Kountze,* 30 Neb. 719, 46 N. W. 1123, 12 L. R. A. 33; *Shearer v. Wilder,* 56 Kan. 252, 43 Pac. 224; *Jones v. Menke,* 168 N. Y. 61, 60 N. E. 1053; *Whitcomb v. Gans,* 90 Ark. 469, 119 S. W. 676; *Allen Estate Association v. Boeke,* 300 Mo. 575, 254 S. W. 858; *Miller v. Davis,* 26 Colo. App. 483, 145 Pac. 714; *Boise Payette Lumber Co. v. Sharp,* 45 Ida. 611, 264 Pac. 665; *Hart v. Reid,* 243 Mich. 175, 219 N. W. 692, 220 N. W. 717.

No decision has been brought to our attention wherein there was drawn in question an obligation of a lessee under a lease contract or an obligation of a vendee under an executory land purchase contract to construct a building or improvement on the land for the benefit of the lessor or vendor of exactly the same nature as this obligation of the Turner company to construct the building under the lease contract here in question. In this contract, it was not agreed that the building should become the property of the railway company, except on failure of the Turner company to remove it, as provided by the concluding language above quoted from the lease contract. It is, however, expressly agreed that a building should be constructed and maintained upon the land during the entire term of the lease, the Turner company being expressly obligated to so construct and maintain the building, according to plans and specifications to be approved by the superintendent of the railway company.

This was manifestly for the express benefit of the railway company, the lessor, as well as for the benefit of the Turner company, the lessee, in that the railway company should have a lien upon the building for the payment of the rent, and also for the payment of the taxes which might be levied upon the land during the term of the lease; the latter, of course, meaning that the railway company should have such lien for the

taxes which it might be required to pay upon the failure of the Turner company to pay them. This, we are of the opinion, constituted the Turner company, the lessee, the agent of the railway company, the lessor owner, so that its construction of the building, in pursuance of the terms of the contract, subjected the land, as well as the building, to the lien claims of the mechanics and materialmen furnishing labor and material for the construction of the building, as awarded by the decree of the superior court.

The only decision brought to our attention which we can regard as possibly tending to be out of harmony with this conclusion is that of *Armstrong Cork Co. v. Merchants' Refrigerating Co.*, 184 Fed. 199, decided by the United States circuit court of appeals for the eighth circuit. There are some general observations made in that decision which may not be wholly in harmony with the conclusion we reach, but a critical reading of the facts of that case, as therein set forth, shows that there was no obligation on the part of the lessee to the lessor to make any improvement whatever upon the premises, the lessee being merely given the privilege to make certain improvements in the way of installation of certain fixtures and appliances incident to its manufacturing business; though, if voluntarily made, being such as could not be removed without injury to the building, they were to remain in the building upon the termination of the lease term. We think that decision is not controlling in our present inquiry, particularly in view of our statutory provisions above quoted.

Our conclusion is that the obligation of the Turner company to build this building and maintain its existence during the entire term of the lease and the interest of the railway company, as lessor, in having it so built and maintained as security for the rent and

the taxes, calls for an affirmance of the decree of the superior court awarding foreclosure of the lien claims of the mechanics and materialmen furnishing labor and material for the construction of the building. The decree is accordingly affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MILLARD, JJ., concur.