[No. 1916–3.   Division Three.   May 5, 1977.]

DUANE C. MARKLEY, ET AL, *Appellants,* V. GENERAL
FIRE EQUIPMENT COMPANY, *Respondent.*

*Fred E. Woeppel,* for appellants.

*Hugh O. Evans* and *Lukins, Annis, Bastine, McKay &
Van Marter, P.S.,* for respondent.

GREEN, J.—Plaintiffs commenced this action for damages
and removal of a mechanics' lien filed by the defendant,
General Fire Equipment Co., arising from the latter's
installation of fire safety equipment. This equipment was
installed at the request of Bridge Receiving Homes, plain-
tiff's lessee. Defendant cross–claimed, seeking foreclosure of
the lien and attorney's fees. Judgment of foreclosure was
entered against plaintiffs Markleys and Cal–Lee Trust.[1]
Plaintiffs appeal.

[1] The Markleys and Cal–Lee Trust were the contract purchasers of the real
property at the time the subject matter of this litigation arose. Subsequently, they

Errors assigned to the trial court's findings and conclusions raise two questions: (1) Is Bridge Receiving Homes, the lessee, an agent of the plaintiffs for the purpose of creating a lien within the meaning of RCW 60.04.010? and (2) If so, will such statutory agency support a deficiency judgment against the plaintiffs–lessors? We answer both questions in the affirmative.

In 1975, plaintiffs owned the Sleepy Hollow Motel near Spokane. They entered into a lease with Bridge Receiving Homes for a period of 3 years beginning May 1, 1975. The lessee was given an option to renew. This lease provided that Bridge Receiving Homes would use the property "for supervised living for teenagers 17 through 19" and contained, *inter alia,* the following conditions:

1. The Tenant agrees:
   (a) To use the premises only for the use described above;
   (b) to make all the repairs required by the building, fire or wire codes of the County of Spokane, State of Washington, in order to obtain a certificate of occupancy or to meet the requirements of any other governmental agency to maintain or operate a group home, . . .

   . . .

   (f) to make no alterations, additions or improvements to the premises without the Landlord's written consent other than Section (b) under CONDITIONS; . . .

Generally, the other conditions required the tenant to make all needed repairs; comply with all sanitation laws and ordinances; not commit or permit waste or damage; provide and pay for all heat and utilities; carry adequate liability insurance; and maintain the grounds.

On June 25, an inspection of the premises by the State Fire Marshal resulted in requiring Bridge Receiving Homes to install certain fire safety equipment before the property

---

sold the property on contract to plaintiffs Hume, agreeing to hold them harmless from any judgment in this action. The Humes are not involved in this appeal.

could be used for a group home. Bridge Receiving Homes purchased the necessary equipment from the defendant who was employed to install it. The installation was completed on July 31, 1975, at a cost of $6,785.93.

In early August, it became apparent to the defendant that Bridge Receiving Homes could not pay its bill. At that time, the defendant contacted one of the plaintiffs, Mr. Markley, and apprised him of the situation. Until that time, plaintiffs were unaware of the installation. On August 13, defendant notified plaintiffs by letter that it supplied labor and materials to the property between July 11–31 and would claim a mechanics' lien for the amount of their bill. On August 14, the lien claim involved in this action was filed in the Spokane County Auditor's Office. It is agreed that defendant complied with the statutory notice requirements, but the parties disagree as to whether defendant is entitled to claim a lien.

It is evident from the testimony that plaintiffs did not participate in the transaction between Bridge Receiving Homes and the defendant; they knew nothing about it until after installation and just prior to receiving written notice. Mr. Markley testified that the provision of the lease requiring Bridge Receiving Homes to meet "building, fire and wire codes of Spokane County" was written in by the lessee's attorney who prepared the lease. He stated the provision was intended to put the burden on Bridge Receiving Homes to "do whatever they had to do . . . if anything was to be done they had to do it." He further testified:

Q . . . Now are you saying that that requirement is only granting them permission to do this?
A That is all we were to do. Their attorney drew it.

After hearing this evidence the trial court concluded that, since Bridge Receiving Homes was required by the terms of the lease to install the fire equipment in order to comply with the restricted use of the premises as a group home, it became the agent of the plaintiffs. The claim of lien was

held valid, and a judgment of foreclosure and for any deficiency was entered. Plaintiffs contend this was error.

■ The propriety of the trial court's judgment turns upon whether Bridge Receiving Homes was an agent of the plaintiffs within the meaning of RCW 60.04.010:

> Every person performing labor upon, furnishing material . . . or otherwise supplying equipment, to be used in the construction, alteration or repair . . . has a lien upon the same for the labor performed, . . . material furnished, or equipment supplied by each, respectively, *whether* performed, furnished, or supplied *at the instance of the owner of the property subject to the lien or his agent;* . . .

(Italics ours.) Early cases construing similar language under a predecessor statute made it clear that a lessee is not the agent of the lessor merely by virtue of the relationship of landlord and tenant. *Z.C. Miles Co. v. Gordon,* 8 Wash. 442, 36 P. 265 (1894); Annot., 79 A.L.R. 962 (1932); Annot., 163 A.L.R. 992 (1946). However, where a lessee is required by the terms of a lease to construct a building according to certain specifications on land owned by the lessor, which is to be paid by crediting the lessee's rental against the cost of the building, the lessor is in effect erecting the building through the lessee, as agent, and both interests are subject to a mechanics' lien. *Kremer v. Walton,* 11 Wash. 120, 39 P. 374 (1895), *aff'd on rehearing,* 16 Wash. 139, 47 P. 238 (1899). On the other hand, where the lessee is merely authorized to build a building on the lessor's land without contribution or consideration in fixing the amount of rental, no lien will attach to the lessor's fee interest in the land even though the building reverts to the lessor on termination of the lease. *Stetson–Post Mill Co. v. Brown,* 21 Wash. 619, 625, 59 P. 507 (1899). These cases were reviewed with approval in *Dahlman v. Thomas,* 88 Wash. 653, 657, 153 P. 1065 (1915), where the court commented upon the reasons underlying such construction of the mechanics' lien statute:

> These laws were invented to meet a previous state of things when owners of land, dealing through contractors

or other third persons, were often enabled to keep valuable improvements that nobody had paid for, with permanent loss to laborers and materialmen whose disposition to give credit was not to be discouraged. It was found that, though hardship must sometimes occur to the owner of land by lien laws, he at least receives and keeps the improvements, and that he is the better able of the two classes, by indemnity beforehand, to protect himself entirely.

Rather than rely upon strict application of agency principles, it is apparent that the court had policy considerations in mind, *i.e.*, to liberally construe the mechanics' lien statute to protect laborers and materialmen where the lessee was *required* to make improvements that would benefit the lessor.

The rules of these early cases have been relied upon in subsequent decisions. For example, in *Miles v. Bunn,* 173 Wash. 303, 305, 22 P.2d 985 (1933), the court said:

The test [of whether the lessee in constructing improvements, acts as agent of the owner] is whether the lessee, under the terms of the contract, has a privilege merely, or is obligated, to construct improvements.

*Bunn v. Bates,* 31 Wn.2d 315, 319, 196 P.2d 741 (1948), the most recent case interpreting the agency language of the mechanics' lien statute, restated the rules this way:

In other words if the lessee makes improvements to the leased premises when he has the privilege to do so under the lease, he makes those improvements for his own benefit. On the other hand, if he makes such improvements because he is required to do so under the terms of the lease, he makes them, not only for his own benefit, but also for the benefit of the lessor, and thereby becomes the lessor's agent, and in case of his default, the owner becomes liable for the improvements.[2]

*See also* Annot., 79 A.L.R. 962 (1932); Annot., 163 A.L.R. 992 (1946).

---

[2]The court also stated that the lease provided, in part:

All electrical wiring shall be changed to the effect that all circuits in leased area are to be removed from present light meter and new meter loop established.

Application of the court's underlying rationale contained in *Dahlman v. Thomas, supra,* and the rules that have evolved in the decisional law of this State, require an affirmance of the trial court's judgment recognizing the validity of the defendant's lien. Under the lease, the use of the premises was strictly limited to the operation of a group home. The obligation on the lessee to make all repairs required by the building, fire or wire codes of Spokane County in order to obtain a certificate of occupancy or to meet the requirements of any other governmental agency to maintain or operate a group home is mandatory. The fire safety standards for group homes are clearly delineated in WAC 212–24. That the lessor regarded such repairs as improvements is evidenced by the last paragraph of the lease:

> Following the original 3 year term of lease, *in consideration of the improvements made by the Tenant and the mutual covenants herein,* the Landlord agrees, should the Tenant cease to receive funding for the operation of this superviced [*sic*] independent living facility . . . the Tenant may surrender the premises to the Landlord by giving sixty (60) days notice in writing, and proof of loss of State and/or local Funding, prior to termination, and shall no longer be liable for any rental payments after sicty [*sic*] (60) days from date of notice.

Mr. Markley's testimony, after the fact, disclaiming any benefit from the improvements is not timely and is self–serving. Whether a benefit flows to the lessor is determined by the circumstances at the time the lease was executed, and not subsequent thereto, particularly after a breach by the lessee. The imposition of a lien and its foreclosure authorized by the judgment must be affirmed.

The second question, whether the circumstances support a personal judgment against plaintiffs for a deficiency, must be resolved in favor of defendants. The terms of the lease,

---

All changes for the aforesaid re–modeling and rewiring to be done at the expense of the lessees.

Apparently, the purpose of this provision was to enable the tenant to have his electrical current put on his own individual meter instead of the landlord's.

which make the improvements mandatory, subject the property to a mechanics' lien because the lessee has become the agent of the owner under the decisional law interpreting RCW 60.04.010. RCW 60.04.130 allows a personal judgment for a deficiency following foreclosure only "against any party *personally* liable for any debt for which the lien is claimed". Our determination that Bridge Receiving Homes was the agent of the plaintiffs, based on decisional statutory interpretation, requires that we hold plaintiffs personally liable for the judgment and is in keeping with the rationale expressed in *Dahlman v. Thomas, supra.*

If policy considerations leading to the decisional law outlined above are to be changed, it must come from the Supreme Court, and not from this court. Accordingly, the judgment of the trial court is affirmed; however, each party shall bear its own costs on appeal.

MUNSON, C.J., and MCINTURFF, J., concur.