[Nos. 14216–0–I; 14381–6–I. Division One. August 6, 1986.]

CHRISTENSEN GROUP, INC., *Appellant,* v. PUGET SOUND POWER AND LIGHT CO., ET AL, *Respondents.*

CHRISTENSEN GROUP, INC., *Appellant,* v. F. K. STONE, ET AL, *Respondents.*

*Arnold B. Robbins* and *Breskin, Robbins & Merkel,* for appellant.

*Thomas M. Fitzpatrick* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for respondents.

GROSSE, J.—Christensen Group, Inc., appeals summary judgments granted in two cases which are consolidated on appeal: one in Snohomish County and one in King County. Appellant contends there are material questions of fact as to whether bank vaults are subject to materialman's liens

and whether Peoples National Bank was an agent of the landowner.

## SNOHOMISH COUNTY ACTION

On November 23, 1981 a lease was signed between Peoples National Bank and Puget Park Center, a Washington general partnership, which included Lloyd W. Powell as a partner. Under the terms of the lease the landlord was to supply a building pad and the tenant was required to build a 16,500–square–foot building. Lloyd Powell was the contractor hired to construct the building. Originally the design of the space for Peoples called for a permanent cast–in–place concrete vault. This requirement was deleted by change order. On July 8, 1982, Peoples contracted with franksbank Security Systems, an affiliate of F. K. Stone, Inc. (franksbank), to provide and install a security vault and equipment. The Snohomish lease contains no language specifying the bank vault as a trade fixture.

## KING COUNTY ACTION

On September 10, 1982, Peoples signed a contract to purchase a bank vault and security equipment from franksbank. On October 22, 1982, Peoples signed a lease with One Bellevue Center Joint Venture of which Wright, Runstad & Company are general partners. Under the terms of that lease Peoples was required to construct a building according to detailed plans and specifications. The contractor for the building was the landlord. A requirement in the contract for construction of the vault was deleted. The contract as changed specified the vault as a trade fixture to be retained by the tenant at the close of the lease. On January 10, 1983, franksbank contracted with appellant to furnish precast concrete panels to be utilized in the construction and installation of the vault. Appellant delivered the concrete panels to the King County and Snohomish County jobsites. They were installed by franksbank.

Motions for summary judgment were made by both parties in both cases. These motions raised the issues of whether the vaults were personalties or fixtures and

whether the landowners' properties were subject to the liens as a result of Peoples' agency for the property owners. Supporting papers in the King County action indicate that appellant fabricated 33 concrete panels to fit a space having interior dimensions of approximately 16 feet by 11 feet. Supporting papers in the Snohomish County action indicate that the vault consists of eight panels weighing a total of 88 tons. In both actions respondents submitted affidavits indicating that Peoples intends to remove those panels at the end of the lease and that this vault was chosen because it could be removed. Only in the King County lease was the vault designated a trade fixture.

The King County court ruled that the vault was personalty. The Snohomish County court ruled that the vault was personalty and that the King County decision was binding on the Snohomish County court because of collateral estoppel.

In our view the pleadings raised material questions of whether the vault was personalty and whether Peoples was the agent of the landowner/lessee.[1] Because we find material issues of fact, we remand these cases for trial.

As to the issue of whether the vaults were personalty, RCW 60.04.010 allows a lien by any person who furnishes material to be used in the construction of any structure. In *Westinghouse Elec. Supply Co. v. Hawthorne,* 21 Wn.2d 74, 150 P.2d 55 (1944), the Washington State Supreme Court required a materialman to prove that an item for which the lien was sought had become a fixture. A fixture is annexed to the realty; its use is consistent with the use of the realty; and the person who annexed the item intends that the annexation be permanent. *Westinghouse,* at 79. *Department of Rev. v. Boeing Co.,* 85 Wn.2d 663, 538 P.2d 505 (1975).

Respondents contend that appellant did not prove, as a

---

[1] We do not consider questions of whether franksbank is a materialman or a registered contractor because these issues were not raised and argued to the trial court. *Farrell v. Score,* 67 Wn.2d 957, 411 P.2d 146 (1966); RAP 2.5(a).

matter of law, the third requirement, intent to make a permanent annexation. Respondents rely on affidavits of a Peoples employee which establish that Peoples chose the vault because it was removable.

As the Supreme Court stated in *Strain v. Green,* 25 Wn.2d 692, 172 P.2d 216 (1946), we will not undertake to write a treatise on the law of fixtures.

"There is a wilderness of authority on this question of fixtures . . . cases . . . are so conflicting that it would be profitless to undertake to review or harmonize them."

*Strain,* at 695 (quoting *Philadelphia Mortgage & Trust Co. v. Miller,* 20 Wash. 607, 56 P. 382 (1899)).

We do think that two cases are helpful in understanding how to prove intention to permanently annex. In *Strain v. Green,* the Supreme Court disregarded testimony of the vendor's subjective intent not to permanently annex and held that a chandelier was a fixture that belonged to the vendees. The vendors had owned the chandelier for 13 years and had installed and removed it from three prior houses. Since the vendor's intention to retain the chandelier had not been communicated to the vendees, the court reviewed facts of how the chandelier was annexed and its purpose to make the residence livable in finding intent to permanently annex. In *Department of Rev. v. Boeing Co.,* the Supreme Court considered six factors in holding that Boeing did not intend to permanently annex, and could not qualify, certain "jigs" as fixtures for purposes of state tax credits.

1. Boeing owned the freehold and could be presumed to intend to benefit the freehold and not to preserve the jigs as personalty.

2. The jigs were necessary to production of the Boeing 747 airplane and there were no plans to end production.

3. Boeing's use of the 747 airplane plant could change with the result that it would be used for manufacturing other airplanes and the present jigs would have to be discarded.

4. The jigs were bolted down in such a fashion that they

could be easily removed without harm to the building.

5. The jigs were designed so that they could be disassembled and moved without undue difficulty or harm to the jigs.

6. Boeing considered the jigs at one time to be personalty and reported them as such for property tax purposes.

 What the *Strain v. Green* and *Department of Rev. v. Boeing Co.* cases teach us is that the issue of intent to permanently annex cannot be decided as a matter of law simply by considering subjective declarations or, in this case, the Peoples affidavits. There must be proof of facts bearing on

> the nature of the article affixed, the relation and situation to the freehold of the party making the annexation, the manner of annexation, and the purpose for which it is made."

*Westinghouse,* at 79 (quoting *Ballard v. Alaska Theatre Co.,* 93 Wash. 655, 161 P. 478 (1916)).

The record before us is insufficient to undertake the review of these factors, similar to the review undertaken in *Department of Rev. v. Boeing Co.* There are no affidavits showing how the vault is annexed or how difficult the removal of the vault would be. The purpose of the annexation of the vault is consistent with the use of the building as a bank. The size of the vault, the weight of the walls, the fact that the concrete panels were installed as walls which are normally considered to be part of the structure, and the fact that a vault is a type of room, create issues of fact as to the intent to benefit the freehold. Neither appellant nor respondents are entitled as a matter of law to a summary judgment on this issue.

 It must be pointed out that an item which is denominated a trade fixture in negotiations between a lessor and lessee can also be a fixture subject to a materialman's lien.

> [T]he right to a mechanic's lien as to materials annexed to realty is to be governed by the rules of the law of fixtures applicable as between vendor and vendee and

between mortgagor and mortgagee of realty, and probably by the rules applicable between heir and executor, but not, it seems, by the rules for determining what are fixtures between landlord and tenant."

*Westinghouse,* at 78.[2] Rather than focusing on the denomination of items as trade fixtures, the trial court's inquiry must always focus on the above mentioned factors which bear on an intention to permanently annex.

 There are also material questions of fact as to whether Peoples is the agent of the landlord in these cases. Under both leases, Peoples is required to build a building for the purpose of operating a branch commercial banking office. Washington case law supports the proposition that if a lessee makes improvements because it is required to do so under the terms of the lease, it makes them not only for its benefit but also for the benefit of the lessor; thereby becoming the lessor's agent. *Bunn v. Bates,* 31 Wn.2d 315, 196 P.2d 741 (1948); *Markley v. General Fire Equip. Co.,* 17 Wn. App. 480, 563 P.2d 1316 (1977). The nature of both these transactions indicates strongly that Peoples was under an obligation to the landlord to build these buildings. Part and parcel of the requirement to build these improvements is the necessity of providing vaults. Indeed, in each construction contract a vault had been included. Material issues of fact exist as to the existence of the agency and whether provision of a vault is within the scope of the agency.

We reverse and remand these cases for trial.

SWANSON and WILLIAMS, JJ., concur.

---

[2]The presumption that a tenant does not intend to benefit the freehold, does not apply to lienable fixtures. *See Ballard v. Alaska Theatre Co.,* 93 Wash. 655, 161 P. 478 (1916) for a discussion of trade fixtures and applicable presumptions.