73 P.2d 312

**RIO GRANDE LUMBER & FUEL CO. v. BUERGO.**

**No. 4242.**

Supreme Court of New Mexico.

Nov. 5, 1937.

W. C. Whatley, of Las Cruces, for appellant.

R. R. Posey, of Las Cruces, for appellee.

SADLER, Justice.

The defendant (appellant) appeals from a judgment foreclosing a mechanic's lien on certain real estate owned by him in the village of Organ, Dona Ana county, N. M.

The improvements for which the lien was claimed consisted of repairs to the roof and putting in windows and doors in a building already constructed. Certain materials were furnished by the plaintiff to the amount of approximately $100 upon order of the lessee of the premises and used in the building. It is for the contract price of said materials that the lien was established and foreclosed against the fee interest in said real estate.

The owner of the fee-simple estate in said premises, as defendant, objected to the establishment of any lien against his interest upon the ground that, within three days after obtaining knowledge that the repairs in question were in progress, he posted the property in compliance with 1929 Comp. § 82-210. The court so found. The theory upon which the trial court apparently fixed liability of defendant's premises to the lien asserted was that in making the repairs indicated the lessee was "agent of the owner" within the meaning of 1929 Comp. § 82-202, and that an owner may not, under the posting statute, relieve himself of liability for improvements which in legal contemplation he himself has ordered.

The claimed support for the trial court's theory rests on the fact that the lessee was in under a written lease in the form of a letter demising the premises for three years, the lessee to have rent free for the first year in exchange for his promise to repair the roof and put in windows and doors and to pay $20 per month for the remaining two years of the term. The defendant disputes the contention that the lessee was his agent within contemplation of that term as found in section 82-202, and, as already indicated, claims exemption from liability under the posting statute. The posting statute is unimportant if plaintiff's theory of agency in the lessee be correct. But, contingent on this court ruling against him on that theory, he asserts the posting statute is ineffective to aid defendant because he knew of the "intended construction, alteration or repair" from the time he signed the lease, and hence was required to post within three days thereafter which admittedly he did not do.

The two pertinent statutes read:

"82-202. *Mechanics and materialmen—Lien.* Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machinery, railroad, wagon road or aqueduct to create hydraulic power, or any other structure, or who performs labor in any mining claim, has a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, sub-contractor, architect, builder, or other person having charge of any mining, or of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this article. L. '80, Ch. 16, § 2; C.L. '97, § 2217; Code '15, § 3319."

"82-210. *Land subject to lien—Notices to be posted.* Every building or other improvement mentioned in the second section of this article, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this article, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to the effect, in some conspicuous place upon said land, or upon the building or other improvement situated thereon. L. '80, Ch. 16, § 11; C.L. '97, § 2226; Code '15, § 3327."

The question before us is a troublesome one as indicated by the contrariety of view reflected in the decisions from other jurisdictions. See annotations in 23 L.R.A.(N.S.) 601, 609, supplemented in L.R.A.1917D 577, 580, and 79 A.L.R. 962.

As pointed out in the opinion in Stewart v. Talbott, 58 Colo. 563, 146 P. 771, Ann. Cas.1916C, 1116, where is to be found an exhaustive review of the authorities, the question is so controlled by the language of the particular statute that decisions from other jurisdictions are of little value unless the statutes are similar. Indeed, as there stated, there is grave danger of confusion in employing the reasoning of decisions from jurisdictions based on statutes of different language and import.

A careful review of our own decisions and some from other jurisdictions with similar statutes constrains us to hold that there is present in the instant lease no such language as warranted the trial court in declaring as a matter of law that the lessee was "agent" of the fee owner within the meaning of that term as employed in 1929 Comp. § 82-202. Mitchell v. McCutcheon, 33 N.M. 78, 260 P. 1086, 1087; McDowell v. Perry, 9 Cal.App.(2d) 555, 51 P.(2d) 117; Stetson-Post Mill Co. v. Brown, 21 Wash. 619, 59 P. 507, 75 Am.St.Rep. 862.

In Mitchell v. McCutcheon, supra, we observed that "inherently the relations of lessor and lessee, and of vendor and vendee, involve no agency." We there said:

"We think, therefore, that we must consider it as the established law in this state that section 3319 [now 1929 Comp., § 82-202] is not to be interpreted by itself, but as modified by sections 3321 [now 1929 Comp., § 82-204] and 3327 [now 1929 Comp., § 82-210], not only when we have in question useful improvements placed upon lands, but when we are considering ordinary labor in the operation of a mine. So, in the case at bar, the liability of the lessor's interest was not established solely by a showing that appellees were employed by one in charge of mining operations for the lessee. It was to be inquired, further, whether the

lessor had knowledge of the mining operations, and, if so, whether he posted the property for the protection of his interest."

"Appellant requested the trial court to conclude, as a matter of law, 'that the lessee and the agent of the lessee are not the agents of the lessor either at common law, or by statute, without more, so as to bring their employees within the lien statute of the state of New Mexico.' This conclusion the trial court refused to make; and if it were clear that the judgment rested upon the converse of this proposition, error would be apparent."

The converse of the proposition stated in the language last quoted from the Mitchell Case as applied to the lessee in the main is affirmed by appellee in the case before us. We there held that, if it were clear the judgment rested on the converse of the proposition stated, "error would be apparent." There is here something more than the mere relationship of lessor and lessee from which to argue agency, in that the lease itself authorized the lessee to make the improvements in the nature of repairs and gave a rent adjustment in connection therewith. But this seems to represent no such active control and participation by the owner (lessor) in the improvement as to constitute the lessee his agent and bind the lessor's estate. Stetson-Post Mill Co. v. Brown, supra. Similarity between the language of the Washington statute and our own will be noted from a reading of the Stetson Case, supra.

The case most nearly in point coming to our attention is McDowell v. Perry, a recent decision of the District Court of Appeal of California, reported at 9 Cal.App. (2d) 555, 51 P.(2d) 117, 121. As pointed out in Ackerson v. Albuquerque Lumber Co., 38 N.M. 191, 29 P.(2d) 714, and again adverted to in Albuquerque Lumber Co. v. Montevista Co., 39 N.M. 6, 38 P.(2d) 77, we adopted the California Act of 1872 (Code Civ.Proc. § 1192), as amended in 1873–74 (page 410). And, while the California act has passed through various amendments since that time not adopted here, the controlling language so far as applicable to the case before us remains substantially the same. In the McDowell Case, a land purchase contract which obligated the vendee to drill an artesian well was involved. The vendee was to drill and construct an adequate irrigation system to irrigate forty acres of land and to plant said forty acres to avocados. The vendee contracted with the well driller to do the work, and an effort was made to subject the vendor's interest. The latter had duly posted a notice of nonresponsibility. The court rejected the claim of mechanic's lien, and among other things said:

"It must be apparent, we think, that so far as this particular statute is concerned the only language thereof which lends any support to the possibility of the existence of the statutory agency contended for by appellant is the following: 'Whether at the instance of the owner, or of any other person acting by his authority or under him, as contractor or otherwise.' The language

which declares that 'every contractor * * * or other person having charge of the construction * * * shall be held to be the agent of the owner' obviously refers to a definite class of persons who are engaged in the actual performance of the specified work. It could hardly be contended that a vendee of land under a contract of sale which specifically provided that he was required to make a designated improvement on the land and who thereupon entered into a contract with a third person for the doing of the work is a contractor in the sense in which the term is there used.

"The language 'whether at the instance of the owner, or of any other person acting by his authority, or under him, as contractor or otherwise' is manifestly not so restricted as the language last considered. However, it is obvious that the question of whether or not a person who orders work to be done and materials furnished is acting by authority of the landowner is a question of fact to be determined by the trier of facts from the evidence adduced. The trial court has found, impliedly at least, that the vendee who was obligated by his contract to drill a well on the land was not acting by the authority of the vendor in making the particular contract which constitutes the basis of appellant's claim to a lien upon the land. This finding has ample evidentiary support. The contention that the vendee in contracting with appellant for the drilling of the well was acting by the authority of the vendor depends solely on the fact that the contract between respondent and France obligated the latter to drill a well. It is our conclusion that the basis for the contention does not fulfill the statutory requirement, and that the burden rested upon appellant to show that the person to whom he furnished labor and materials for the drilling of the well was authorized by the landowner to contract for the furnishing of the very labor and materials that were used in the drilling of the particular well for which appellant claims a lien. The circumstances of the case indicate the reasonableness of this construction. The evidence showed that appellant was fully familiar with the provisions of the contract between respondent and the defendant, France, prior to the time he did any work on the well. He was acquainted with respondent and had talked with him. He could easily have discovered whether or not France was authorized by respondent to contract for the furnishing of the labor and materials which he proposed to furnish and at the price which he proposed to charge therefor. Furthermore, the evidence showed that on the day following the arrival of appellant's well-drilling equipment on the land seven notices signed by respondent were posted at various conspicuous places on the land. These notices stated that respondent was the owner in fee of the ranch which was legally described; that he had entered into an agreement with France on July 11, 1930, whereby France agreed to purchase portions of the ranch and to drill wells thereon and otherwise to improve the property. The notices concluded with a statement that the signer would not be responsible for the drilling of any

wells or for any materials or labor of any kind furnished to France. It is neither disputed that these notices were posted on the land nor did appellant deny that he had seen them. Appellant was therefore fully apprised that France was not in fact authorized by the owner of the property to act for him in the well-drilling operations, and that the owner disclaimed responsibility for any materials furnished · or work performed in the drilling of any wells. This evidence negatives · appellant's contention of statutory agency by the showing that no actual agency existed and that appellant was fully advised thereof."

 We think there is, in the case before us, an insufficient showing to warrant the declaration as a matter of law that the lessee was agent of the owner within the language of section 82-202. Certainly a "lessee" is not per se a "contractor, sub-contractor, architect (or) builder," as those terms are employed in said section in connection with the declaration that they "shall be held to be the agent of the owner" for the purposes of said article. Whether any one of the class enumerated is so in fact in any given case must depend on circumstances stronger than those here shown to warrant such a holding. Of course, if the relationship of lessor and lessee or vendor and vendee represents a mere artifice or scheme resorted to by a fee owner to secure the placing of. valuable improvements on his property without liability of his estate therefor (Western Lumber & Mill Co. v. Merchants' Amusement Co., 13 Cal.App.

4, 108 P. 891), a different case would be presented. But we have no such case before us. Many of the cases holding the lessee or vendee agent of the owner for purpose of binding the latter's estate are of that kind; or they show such an active participation by the fee owner in the construction of the building or other improvement as to warrant a finding that, although the lessee or vendee is such in name, he is in truth a "contractor, sub-contractor, architect (or) builder," and hence the "agent" contemplated by the statute.

 Our conclusion is that only the lessee's interest was subject to the lien asserted (see 1929 Comp. § 82-204) unless the defendant (the fee owner) permitted his interest to become subject to the lien through failure to post a notice of nonresponsibility as provided by 1929 Comp. § 82-210. It is undisputed that the materials on account of which the lien is claimed were sold and charged to the lessee. This brings us to a consideration of the second point in the case.

 The lease was dated February 3, 1931. No materials were furnished by plaintiff until the early part of April, 1931. Within three days after learning the improvement was under way· defendant posted notice of nonresponsibility. The court so found. The nice question presented. is whether in view of the language of section 82-210 he should have posted within three days after execution of the lease. In order to claim immunity from liability for his property under the circumstances here

shown, the fee owner must, "within three days after he shall obtain knowledge of the construction, alteration or repair, or the *intended construction, alteration or repair*" (italics ours), post notice of nonresponsibility in some conspicuous place on the land or improvement located thereon. Arguing that the defendant obtained knowledge of the intended repairs from the lease itself, plaintiff contends the notice posted some sixty days thereafter is too late to satisfy the statute.

The California statute prior to 1911 was in the exact language of our own in the particular just italicized (St.Cal.1907, p. 577). Indeed, as above said, our statute was adopted from California. Several California decisions have commented upon the peculiar language of the statute and its effect. Santa Monica Lbr. & Mill Co. v. Hege, 119 Cal. 376, 51 P. 555; Evans v. Judson, 120 Cal. 282, 52 P. 585; Hines v. Miller, 122 Cal. 517, 55 P. 401; Wm. H. Birch & Co. v. Magic Transit Co., 139 Cal. 496, 73 P. 238; Western Lbr. & Mill Co. v. Merchants' Amusement Co., 13 Cal.App. 4, 108 P. 891; S. H. Harmon Lbr. Co. v. Brown, 165 Cal. 193, 131 P. 368.

In only one of the California cases cited is the precise point here presented decided. It is the case of Wm. H. Birch & Co. v. Magic Transit Co., 139 Cal. 496, 73 P. 238, 240. The lease involved called upon the lessee to erect a scenic railway upon the demised premises to be completed within fifty days from date of the lease. The contention was made that the lessor, apprised by the terms of the lease that the improve-

ment mentioned was contemplated, should have posted within three days from date of the lease in order to relieve his estate from liability for the lien. The lessor posted five days after the knowledge furnished by the lease of the intended construction and within one day after the actual construction was commenced. The trial court, having held such posting effective to relieve the owner, was affirmed in its conclusion by the decision of the Supreme Court adopting the opinion of the Supreme Court commissioners. The situation there existing is very similar to the one presented to us. The court said: "Whether a notice posted within three days after knowledge of the intended construction would in all cases be sufficient to protect the owner is a question not before us. We think, however, a failure to give such a notice by the owner, who does in fact give the notice within three days after he shall have obtained knowledge of the actual commencement of the work, does not deprive him of the protection given him by the statute."

So, in the instant case, we are not called upon to decide whether a notice posted within three days after knowledge of the intended construction furnished by the lease would be sufficient. That question is not before us, as it was not before the Supreme Court of California. What we do hold is that a notice posted within three days after the owner obtains knowledge of actual construction affords the protection contemplated by the statute.

In every one of the other California cases cited to this point the holding is simply to

the effect that where no notice at all was posted the provision for the improvement contained in the lease with other facts in the case was sufficient to put the owner on inquiry and charge him with constructive notice of the contemplated improvement so as to bind his estate. Thus, in each of the other cases, there was left open the question decided in the Birch Case just quoted from, as well as the question whether posting within three days from execution of the lease would be sufficient.

In a later case by the District Court of Appeal of California, Whiting-Mead Commercial Co. v. Brown, 44 Cal.App. 371, 186 P. 386, an amendment of the statute is noted by dropping the language "or intended construction," etc. Of course, after the amendment, a posting "within the time limited after knowledge of the actual improvements" would be sufficient, as it was held to be in that case.

The trial court having found that the defendant posted the statutory notice within three days after obtaining knowledge of actual work on the improvements mentioned in the lease, his estate must be held relieved of liability for the lien asserted against it. The judgment of the district court will be reversed and the cause remanded to the district court of Dona Ana county, with instructions to set same aside and to dismiss the complaint. The appellant will recover his costs.

It is so ordered.

HUDSPETH, C. J., and BICKLEY, BRICE, and ZINN, JJ., concur.